CENTER FOR BIOLOGICAL DIVERSITY, Plaintiff–Appellant,

v.

Gale NORTON, Secretary of the Department of the Interior,* Defendant–Appellee.

No. 00–16020.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 9, 2001

Filed June 20, 2001

---

* Gale Norton is substituted for Bruce Babbitt, as Secretary of the Department of the Interi-or, pursuant to Fed. R.App. P. 43(c)(1).

---

Matt Kenna, Kenna & Hickcox, P.C., Durango, Colorado, for the plaintiff–appellant.

Mark R. Haag, United States Department of Justice, Environment & Natural Resources Division, Washington, D.C., for the defendant–appellee.

Before: TROTT, THOMAS, and BERZON, Circuit Judges.

BERZON, Circuit Judge:

The Center for Biological Diversity (the "Center") appeals the district court's grant of summary judgment in favor of the Secretary of the Interior (the "Secretary"). The district court rejected the Center's effort to compel the Secretary to issue certain findings in response to petitions to list two species for protection under the Endangered Species Act ("ESA"). 16 U.S.C. § 1531 et seq. We find that the Secretary improperly refused to make the necessary findings and therefore reverse the district court's decision.

## I. Background

The Endangered Species Act, enacted in 1973, provides "a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved," and "a program for the conservation of such endangered species and threatened species." 16 U.S.C. § 1531(b). An "endangered species" is "any species which is in danger of extinction throughout all or a significant portion of its range," while a "threatened species" is one "which is likely to become an endangered species within the foreseeable future." 16 U.S.C. § 1532(6), (20).

At the heart of the present case is the relationship between two methods prescribed in the statute for listing species for protection as endangered or threatened under the ESA. One method allows the Secretary to act on her own initiative to identify species for protection. The second allows interested citizens to compel the Secretary's consideration of a species by filing a petition. The end result in either case is the same: the Secretary must issue a final determination stating whether circumstances warrant listing a species as endangered or threatened. There are, however, important differences between the two methods that dictate how (and when) the Secretary reaches that conclusion.

### A. Species Identified by the Secretary.

Under the first method, the Secretary may, on her own accord, consider whether a species is eligible for protection as endangered or threatened because of:

(A) the present or threatened destruction, modification, or curtailment of its habitat or range;

(B) overutilization for commercial, recreational, scientific, or educational purposes;

(C) disease or predation;

(D) the inadequacy of existing regulatory mechanisms; or

(E) other natural or manmade factors affecting its continued existence.

16 U.S.C. § 1533(a)(1). If the Secretary finds that the "best scientific and commer-

cial data available to [her]" demonstrates that a species is endangered or threatened because of the presence of one or more of these factors, 16 U.S.C. § 1533(b)(1)(A), she must publish a proposed rule identifying the species as such. 50 C.F.R. § 424.11(c). A period of public comment follows. Within one year, the Secretary must either publish a final rule designating the species for protection or withdraw the proposed rule upon a finding "that available evidence does not justify the action." 50 C.F.R. § 424.17(a); *see also* 16 U.S.C. § 1533(b)(6)(A).[1]

Although not expressly provided in the statute, the regulations implementing the ESA also permit the Secretary to find that listing of a species *may* be warranted "but that the available evidence is not sufficiently definitive to justify proposing the action at that time." 50 C.F.R. § 424.15(a). The Secretary typically does not provide an explanation for this decision but instead publishes a brief, one-line notice in the Federal Register identifying the species as a "candidate" for protection under the ESA.[2] *See, e.g.*, 64 Fed. Reg. 57,534 (Oct. 25, 1999) (listing candidate species). Candidates are "any species being considered by the Secretary for listing as an endangered or a threatened species, but not yet the subject of a proposed rule." 50 C.F.R. § 424.02(b). From time to time, the Secretary may publish updates of the review status of species that are candidates for listing. 50 C.F.R. § 424.15(b). There is, however, no specific time frame during which the Secretary must act on candidate species. *See id.* (noting that "none of the substantive or procedural pro-

visions of the Act apply to a species that is designated as a candidate for listing").

B. *Species Identified by Petition.*

The second method for listing species allows interested persons to petition the Secretary to add (or remove) species from either the endangered or threatened species lists. Once the Secretary receives such a petition, she has 90 days to decide whether it presents "substantial scientific or commercial information indicating that the petitioned action may be warranted." 16 U.S.C. § 1533(b)(3)(A). If so, the Secretary must "promptly commence a review of the status of the species concerned." *Id.* Within 12 months after the petition is filed, the Secretary must determine that either (1) the petitioned action is warranted, in which case she must publish a proposed rule designating the species for protection; (2) the petitioned action is not warranted; or (3) the petitioned action is warranted but immediate promulgation of a rule is precluded by other pending proposals. 16 U.S.C. § 1533(b)(3)(B). If the Secretary finds that action is "warranted but precluded," she must promptly publish that finding along with "a description and evaluation of the reasons and data on which the finding is based." *Id.* Findings that a petitioned action is not warranted or is "warranted but precluded" are subject to judicial review. 16 U.S.C. § 1533(b)(3)(C)(ii).

C. *The Petition Management Guidance Policy.*

In 1996, the Fish and Wildlife Service ("FWS") adopted a new policy governing

---

1. The Secretary may also delay a final decision for up to six months in order to solicit additional data because of "substantial disagreement" in the scientific community regarding the "sufficiency or accuracy of the available data relevant to the determination or revision concerned." 16 U.S.C. § 1533(b)(6)(B)(i).

2. The regulations explain that the purpose of candidate notices is to "invite comment from all interested parties regarding the status of the species named." 50 C.F.R. § 424.15(c).

its treatment of citizen-sponsored petitions. (The policy is described in the 1996 "Petition Management Guidance" manual and is hereafter referred to as the "PMG policy.") The policy provides that "[a] petition for an action on a species or critical habitat 'identical' or 'equivalent' to a petition *still pending (or active)* requires only a prompt (i.e., within 30 days) response informing the submitter of the prior petition and its status; Federal Register publication of this response is not required." (Emphasis in the original.) The PMG policy equates species identified as candidates for listing with those designated "warranted but precluded" under 16 U.S.C. § 1533(b)(3)(B)(iii). Candidate species are thus "consider[ed] ... as under petition," and a petition to list a candidate species is deemed "redundant." Consequently, the Secretary now treats petitions to list species already identified as candidates for protection as second petitions and does not—ever—fulfill the statutory obligations described above that ordinarily attach to initial petitions.

Several significant consequences for petitions to list species already designated by the Secretary as candidates for protection follow from the PMG policy. First, the Secretary may avoid publishing an explanation for her decision not to take more immediate action on a petition to protect a species. Second, because the Secretary's decision to designate a species as a candidate does not require any explanation, there is no basis to review the decision not

to take prompt action on a petition to list a candidate species. Third, the timetable requirements that normally govern petitions do not apply. The Center's position in this case is that, taken together, these consequences substantially and impermissibly compromise the statutory scheme for considering petitions to list a species as endangered or threatened.

## II. The Chiricahua Leopard Frog and the Gila Chub

The particular species at issue in this case are the Chiricahua leopard frog (the "frog") and the Gila chub (the "chub").[3] Their histories under the ESA demonstrate both the importance of the petition process and the statutory problems created by the PMG policy.

The chub appeared as a candidate for listing as early as 1982 and the frog as early as 1991. *See* 47 Fed. Reg. 58,454, 58,455 (Dec. 30, 1982) (chub); 56 Fed. Reg. 58,804, 58,806 (Nov. 21, 1991) (frog). Although the Secretary identified both species as candidates for listing, she had taken no action on either as of June 1998. At that time, the Center filed two petitions requesting that the Secretary extend ESA protection to both species. The Secretary did not, however, issue 90–day statements or 12–month findings in response to either petition, as required by 16 U.S.C. § 1533(b)(3)(A) and (B). Rather, the FWS sent a pair of letters to the Center explaining that it had already designated both the

---

**3.** The Center offers the following descriptions of the species, which do not differ materially from the Secretary's: "The Gila chub (*Gila intermedia*) is a dark steel grey, chunky-bodied minnow, which averages 5–8 inches in length. It is endemic to the Gila River basin in Arizona and New Mexico, although it has been extirpated from New Mexico. It is currently limited to fewer than 15 streams of the Gila River basin in central and southeastern Arizona." "The Chiricahua leopard frog

(*Rana chiricahuensis*) is a stout leopard frog with a broad head and a short snout, averaging 3–4 inches in length, with a unique snore-like mating call. It historically occurred on the Mogollon Plateau in Arizona and New Mexico, the Sky Islands of southeastern Arizona, southwestern New Mexico, and northern Mexico. Today the Chiricahua leopard frog occupies fewer than 87 sites range wide."

chub and the frog as candidate species. Citing the PMG policy, the FWS further noted that

> candidate species are considered to be under petition and covered by a "warranted but precluded" finding under section 4(b)(3)(B)(iii) of the [ESA]. Since listing of candidates is, by definition, already warranted, petitions on candidates are redundant and treated as second petitions. Preparation of a 90 day finding is considered superfluous and would add undue work to an already heavily burdened listing program. Therefore, the Service will not make a 90–day finding on your petition to list the Gila chub.

The same language was used in the letter denying action on the frog petition.

In August 1999, after the 12–month deadline passed, the Center filed suit to compel the Secretary to issue findings as required by the ESA. Two months later, however, the Secretary again published one-line notices in the Federal Register simply identifying the chub and the frog as candidates for review. 64 Fed. Reg. 57,534, 57,538 (Oct. 25, 1999). The Secretary defended her actions on the basis that the PMG policy is valid and precludes any requirement for further findings. In January 2000, the district court dismissed the Center's case, finding that candidate designation under the PMG policy satisfied the ESA's findings requirements, and granted summary judgment in favor of the Secretary. This appeal followed.[4]

### III. Analysis

The Center is challenging the district court's conclusion that the PMG policy is consistent with the requirements of the ESA and the court's subsequent decision granting summary judgment in favor of the Secretary. We review that decision de novo. *Swanson v. United States Forest Serv.*, 87 F.3d 339, 343 (9th Cir.1996).

At issue here is the validity of the PMG policy. If that policy is supported by the clear intent of Congress under the ESA, "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). But if the ESA "is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's [policy] is based on a permissible construction of the statute." *Id.* at 843, 104 S.Ct. 2778. The Secretary argues that the statute is silent or ambiguous on how she should handle petitions to list species already under consideration as candidates.

We disagree. The statute is not at all ambiguous, but instead is exquisitely clear, concerning what the Secretary must do when she receives a petition requesting action on a species.

First, "[t]o the maximum extent practicable, within 90 days after receiving the petition ... the Secretary *shall* make a finding as to whether the petition presents substantial scientific or commercial information indicating that the petitioned action may be warranted." 16 U.S.C. § 1533(b)(3)(A) (emphasis added); *see also Forest Guardians v. Babbitt,* 174 F.3d 1178, 1187 (10th Cir.1999) (noting that when interpreting the listing requirements of the ESA, " '[s]hall' means shall"). Un-

4. In June 2000, the Secretary published a proposed rule to list the frog as a threatened species. 65 Fed. Reg. 37,343 (June 14, 2000). This action renders moot the Center's appeal as it relates to the frog petition. The status of the chub, however, is unchanged, and the validity of the PMG policy as it pertains to the chub is still properly before us.

der the PMG policy, "candidate species" include those "for which sufficient information is available to indicate that a listing proposal is appropriate." Thus, designation of candidate status arguably constitutes a finding that the petitioned action "may be warranted" and might satisfy this initial requirement.

The ESA further provides, however, that within 12 months after receipt of the petition, "the Secretary *shall* make one of the following findings": (1) the petitioned action is warranted; (2) the petitioned action is not warranted; or (3) the petitioned action is "warranted but precluded." 16 U.S.C. § 1533(b)(3)(B) (emphasis added). Designating a species as a candidate for listing does not satisfy either of the first two options, and the Secretary makes no such claim. She does contend, however, that designation of candidate status fulfills the third option and thus fulfills her obligations under the ESA. For the following three reasons, the Secretary is wrong.

### A. *Candidate status does not satisfy the findings requirements.*

While the Secretary's designation of candidate status may fulfill the requirements for a finding of "warranted but precluded" in spirit, it certainly does not satisfy them in deed. If the Secretary finds that listing of a species is "warranted but precluded," the ESA requires her to "promptly publish such findings in the Federal Register, together with *a description and evaluation of the reasons and data on which the finding is based.*" 16 U.S.C. § 1533(b)(3)(B)(iii) (emphasis added). A one-line notice in the Federal Register that a species has been designated a candidate does not fulfill this obligation.

A "warranted but precluded" finding has two components. First, it is an admission by the Secretary that a species qualifies for protection—and that protection is

"warranted"—under the ESA, an admission which, as noted, might be met by a candidate designation under the PMG policy's revised definition of candidate species. Second, the finding also states that a final rule cannot be issued right away, for administrative reasons, thereby temporarily excusing the Secretary from issuing a final rule. The circumstances under which the Secretary may invoke that excuse, however, are narrowly defined; Congress emphasized that providing for the "warranted but precluded" designation was not designed to justify "the foot-dragging efforts of a delinquent agency." H. Conf. Rep. No. 97–835, at 22 (1982), *reprinted in* 1982 U.S.C.C.A.N. 2860, 2863. Specifically, the Secretary must show that she is "actively working on other listings and delistings and must determine and publish a finding that such other work has resulted in pending proposals which *actually* preclude[d][her] proposing the petitioned action at that time." *Id.* (emphasis added). For that reason, "the Secretary must determine and present evidence that [s]he is, in fact, making expeditious progress in the process of listing and delisting other species." *Id.; see also* 16 U.S.C. § 1533(b)(3)(B)(iii) (requiring the Secretary to show that "expeditious progress is being made to add qualified species to either [the endangered or threatened species lists] and to remove from such lists species for which the protections of [the ESA] are no longer necessary").

When the Secretary, acting on her own initiative, designates a species for candidate status, she need not—and does not—explain why more immediate action is not appropriate. *Compare* 64 Fed. Reg. 57,-534, 57,538 (Oct. 25, 1999) (including the chub in a list of candidate species) *with* 60 Fed. Reg. 15,281, 15,283 (Mar. 23, 1995) (providing a detailed explanation of the Secretary's finding that immediate action

on the boreal toad was "precluded"). To the extent the PMG policy allows the Secretary to avoid this explanation in response to a citizen-sponsored petition, it is inconsistent with the express requirements of the ESA.

B. *Candidate status does not provide an adequate basis for judicial review.*

The published findings supporting a determination that listing is "warranted but precluded" are important to the petition process. They provide public notice of species that are likely to become the subject of proposed rules and allow public agencies, private landowners, and other interested parties to respond appropriately. They also provide the basis for review of the Secretary's decision by the court.

The ESA specifically provides that the Secretary's "warranted but precluded" findings are subject to judicial review. 16 U.S.C. § 1533(b)(3)(C)(ii). Were this court to accept the Secretary's unexplained contention that her designation of the chub as candidate species was equivalent to a finding that listing was "warranted but precluded," judicial review would become meaningless. We would have no basis to evaluate the Secretary's conclusion that immediate action is precluded by other more urgent matters. *See Friends of the Wild Swan v. United States Fish & Wildlife Serv.*, 945 F.Supp. 1388, 1396–1400 (D.Or.1996) (holding that Secretary's finding that listing is "warranted but precluded" is arbitrary and capricious if not supported by the reasons provided); *see also Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins.*, 463 U.S. 29,

48, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983) (requiring an agency to "cogently explain why it has exercised its discretion in a given manner"); *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196–97, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947) ("It will not do for a court to be compelled to guess at the theory underlying the agency's action . . . .").

Accordingly, the Secretary failed to fulfill her obligations under the ESA when she made no 12–month findings in response to the Center's petition and instead treated the chub's one-line candidate designation, issued with no specific explanation for the delay in filing a final rule, as equivalent to a finding that the listing was "warranted but precluded." Insofar as the Secretary relied on the PMG policy as permitting such a truncated process, the PMG policy is inherently inconsistent with the specific provisions of the statute providing for judicial review of "warranted but precluded" findings.

C. *Candidate status does not satisfy the ESA's mandatory deadlines.*

The final significant statutory shortfall of the PMG policy is its lack of deadlines for action on species subject to petitions. As the legislative history of the ESA and its subsequent amendments demonstrate, Congress from the outset recognized that timeliness in the listing process is essential. *See, e.g.*, S. Rep. No. 93–307 (1973), *reprinted in* 1973 U.S.C.C.A.N. 2989, 2991 (noting the inadequacies of earlier legislation).[5] During subsequent revisions of the ESA, Congress expressed particular concern for species that had languished for

---

**5.** Prior to the 1982 amendments, "the ESA provided, 'The Secretary shall, upon the petition of an interested person, . . . conduct a review of any listed or unlisted species proposed to be removed from or added to either [the endangered or threatened species lists],

but only if [s]he makes and publishes a finding that such person has presented substantial evidence which in [her] judgment warrants such a review.'" Pub. L. 93–205 § 4(c)(2), 87 Stat. 884, 888 (1973).

years in "status reviews." H.R. Conf. Rep. No. 97–835, at 21 (1982), *reprinted in* 1982 U.S.C.C.A.N. 2860, 2862. In order to "force action on listing and delisting proposals," *id.,* Congress amended the ESA's petition process expressly to provide certain mandatory deadlines by which the Secretary must act on a petition. Pub. L. 97–304 § 2(a)(2), 96 Stat. 1411, 1412 (1992) (amending 16 U.S.C. § 1533(b)(3) to include the 90–day and 12–month finding requirements).

As noted, the ESA now instructs the Secretary to determine if a petitioned request likely has merit within 90 days of its receipt; within 12 months, she must decide whether or not action is warranted or "warranted but precluded." 16 U.S.C. § 1533(b)(3). If the Secretary finds that action is "warranted but precluded," the cycle repeats: Within 12 months of that determination, she must again decide whether or not action is warranted or "warranted but precluded" and publish appropriate supporting findings. 16 U.S.C. § 1533(b)(3)(C)(i); *see also* H. Conf. Rep. 97–385, at 22 (1982), *reprinted in* 1982 U.S.C.C.A.N. 2860, 2863 (noting that within 12 months after filing a "warranted but precluded" finding, the Secretary again "must (a) publish a proposed regulation to implement the petitioned action, or (b) make a finding that the petitioned action is not warranted, or (c) make a new finding that [s]he is unable to propose such action at that time or to make a final determination within the statutorily specified time frame and evidence that [s]he is continuing to make progress in the process of listing and delisting other species"). By imposing these deadlines, Congress "replace[d] the Secretary's discretion with mandatory, nondiscretionary duties." *Id.* at 20, *reprinted in* 1982 U.S.C.C.A.N. 2860, 2861. The statutory deadlines thus assure that species tagged for protection are not forgotten in an administrative quagmire, but instead are periodically monitored and reconsidered for listing.

Candidate status does not guarantee a similar time frame for administrative action. The cases of both the frog, which the Secretary identified as a candidate in 1991—nine years before she published a proposed rule to list the species as threatened—and the chub, which has been a candidate for nearly two decades without ever being the subject of formal findings, demonstrate that potentially qualified species may sit on candidate lists for extraordinarily long periods before becoming the subject of protective rules. It was in precisely these situations that Congress intended the petitioning process to "*interrupt*[] the department's priority system by requiring *immediate* review." H. Rep. No. 95–1625, at 5 (1978), *reprinted in* 1978 U.S.C.C.A.N. 9453, 8455 (emphasis added). Because the PMG policy allows the Secretary to sidestep the prescribed time requirements, it is inconsistent with the ESA. The Secretary therefore improperly relied on the policy when she declined to either make findings in support of a proposed rule or explain why action on the chub was unwarranted or "warranted but precluded" within 12 months after the Center filed its petition.

## IV.  Conclusion

For the foregoing reasons, we conclude that the PMG policy violates the plain terms of the ESA and that the Secretary improperly relied upon it when she refused to issue 12–month findings in response to the Center's petitions. We therefore REVERSE the district court's decision dismissing the Center's claim and REMAND this matter for proceedings consistent with this opinion.