**NATURAL RESOURCES DEFENSE COUNCIL, INC., Plaintiff–Appellee,**

v.

**UNITED STATE DEPARTMENT OF THE INTERIOR; Secretary of the Department of the Interior; United States Fish & Wildlife Service; Regional Director of the United States Fish & Wildlife Service, Region 1; Field Supervisor, United States Fish and Wildlife Service, Ventura Field Office; Director of the United States Fish & Wildlife Service, Defendants–Appellants.**

No. 99–56075.

D.C. No. CV–98–07596–CM.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 15, 2000.

Decided July 5, 2001.

---

Before PREGERSON, NOONAN, and SILVERMAN, Circuit Judges.

### ORDER *

On March 7, 1994, the Fish and Wildlife Service published a final rule listing the tidewater goby as an endangered species. Under the Endangered Species Act, the Secretary of the Interior must designate a critical habitat for an endangered species within a year. 16 U.S.C. § 1533(a)(3), 1533(b)(6)(A)(ii), 1533(b)(6)(C)(ii). When the defendants failed to designate a critical habitat for the tidewater goby, and four years after the Service had listed it as an endangered species, the plaintiff brought suit in district court to compel the designation of the critical habitat.

On April 6, 1999, the district court granted summary judgment to the plaintiff and issued an injunction requiring the defendants to designate a critical habitat for the tidewater goby within 120 days. In the same order, the district court denied the defendants' request for a stay. The defendants filed the instant appeal.

■ On the day of oral argument before this court, defendants published a final rule designating the critical habitat for the tidewater goby. The case or controversy with respect to the designation of a critical habitat for the tidewater goby is thus over. Under Article III of the Constitution, our jurisdiction to review a case depends on the existence of a live case or controversy. We no longer have one. This case has become moot. *See, e.g., DeFunis v. Odegaard,* 416 U.S. 312, 316–17, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974).

■ The dissent contends that this case falls within the "capable of repetition yet evading review" exception to the mootness doctrine. This exception does not apply here because the question presented in this appeal is not destined to evade review if it arises again. We note that after filing its appeal in this case, the defendants never requested that this court stay the district court injunction pending appeal. It could have. *See* Rule 8, Federal Rules of Appellate Procedure; *see, e.g., A & M Records, Inc. v. Napster, Inc.,* 239 F.3d

---

\* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36–3.

1004, 1011 (9th Cir.2001). Instead, while the appeal was pending, the defendants went ahead and designated the critical habitat for the tidewater goby, thus mooting the controversy. In the future, if the defendants obtain a stay of an injunction to designate a critical habitat and refrain from making the designation while the stay is in effect, the case will not become moot and the question will not evade review.[1] Likewise, if a district court in the future were to deny an injunction in a case like this, an appeal from the denial will be ripe for decision without any additional ado. That is exactly what happened in a recent case involving a very similar issue. *Center for Biological Diversity v. Norton,* 254 F.3d 833 (9th Cir.2001) (reversing district court decision that refused to compel the Secretary of the Interior to make certain findings as required by the ESA).

Our dissenting colleague argues that the duration of the challenged action is too short to allow full litigation before it ceases. However, with the utmost respect, he fails to distinguish between court orders and regulatory or statutory deadlines. As noted above, the "challenged action" is an injunction requiring certain action within 120 days. The 120 day deadline was chosen by the judge in his discretion. He could have picked 150 days, 180 days, 365 days, or he could have stayed the injunction altogether pending appeal. So could we. This is in sharp contrast to the cases cited in the dissent such as *Greenpeace v. Franklin,* 14 F.3d 1324 (9th Cir.1992) and *Alaska Ctr. for the Env't v. U.S. Forest Serv.,* 189 F.3d 851 (9th Cir.1999) in which the "short time" is mandated by regulation or permit, making it inevitable that the case will become moot each and every time

it is challenged. *Miller v. California Pac. Med. Ctr.,* 19 F.3d 449 (9th Cir.1994) (en banc), is clearly distinguishable. It involved a National Labor Relations Act § 10(j) injunction and both proceedings and case law unique to NLRB litigation.

■ Because the plaintiff's claim sought to remedy the defendants' failure to designate a critical habitat for the tidewater goby, and the defendants have now so designated, there is no remaining controversy for this court to decide. Moreover, it is well settled that "a federal court has no authority to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." *Church of Scientology v. U.S.,* 506 U.S. 9, 12, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992) (internal citations omitted).

The case is DISMISSED.

PREGERSON, Circuit Judge, dissenting.

This case raises the important question whether courts should craft exceptions to the clear, mandatory deadlines of the Endangered Species Act ("ESA" or the "Act") to accommodate inadequate agency resources. The question arises in this case—as well in numerous similar cases—because the Fish and Wildlife Service ("Service") failed to timely designate a critical habitat as required by the ESA. The Service concedes that it violated the ESA's mandatory deadline for the designation of the tidewater goby's critical habitat, but argues that equitable factors, namely the Service's limited budget and its priori-

---

1. It also is possible to obtain a stay pending appeal from the district court. *See* Rule 8(a)(1), Federal Rules of Appellate Procedure. Although the district court in this case declined to postpone compliance with its order beyond 120 days, it is not a forgone conclusion that another district court would refuse to stay its injunction pending full resolution of an appeal.

tization scheme, should excuse its admitted non-compliance.

The majority declines to consider the merits of this case on the ground that the Service's compliance with the district court's injunctive order renders the case moot. The majority's conclusion that this case is moot is contrary to the position of both parties, which have asserted that this case is not moot. More importantly, the majority misconceives the well established "capable of repetition, yet evading review" exception to the mootness doctrine. By failing to rule on the merits, the majority permits the important legal question raised in this appeal to go unanswered and fails its Article III obligation to hear "cases and controversies." U.S. CONST. art. III, § 2. I respectfully dissent from the majority's order dismissing this case as moot. I would reach the merits of the case, and affirm the district court's injunctive order.

## I.

The ESA, passed by Congress in 1973, establishes a scheme for the protection of endangered and threatened species and their habitats. Under the ESA, the Secretary of the Interior (the "Secretary") must identify endangered species, designate their "critical habitats," and develop and implement recovery plans. 16 U.S.C. §§ 1533, 1536, 1538, 1539. Section 1533— or "Section 4"[1]—of the ESA governs the listing of species and the designation of their critical habitats (collectively "listing" duties). *See* 16 U.S.C. § 1533. Pursuant

to this section, the Secretary must first "determine whether any species is an endangered ... or threatened species." 16 U.S.C. § 1533(a)(1). For endangered or threatened species, the Secretary must "concurrently ... designate any habitat of such species which is then considered to be [a] critical habitat," unless the Secretary determines that such a designation is not "prudent." 16 U.S.C. § 1533(a)(3). The Secretary of the Interior has charged the Fish and Wildlife Service with carrying out the ESA's listing duties, including designating critical habitats for species listed as endangered or threatened. 50 C.F.R. 402.01(b) (2001).

The statute provides an extended period of time for the Secretary to designate the critical habitat.[2] Rather than "concurrently" designating the critical habitat when it lists the species as endangered or threatened, the Secretary may instead publish notice extending the period for designation by an additional year. 16 U.S.C. §§ 1533(b)(6)(A)(ii), 1533(b)(6)(C)(ii). Unless the designation is not "prudent," the statute clearly requires a designation of critical habitat within the one-year additional period after the species is listed as endangered, unless:

the Secretary deems that -

——

(ii) critical habitat of such species is not then determinable, in which case the Secretary, with respect to the proposed regulation to designate such habitat, may extend the one-year peri-

---

**1.** The listing of endangered species and designation of their critical habitats are referred to as "Section 4" duties because they were set forth in Section 4 of the ESA of 1973. *See* Pub.L. No. 93–205, 87 Stat. 884 (1973). In this dissent, I also refer to "Section 7," which requires the Secretary to consult with other federal agencies to ensure that federal projects do not jeopardize endangered species, or

result in the destruction or modification of the species' critical habitat. *See id.*

**2.** The ESA requires the Service to designate the critical habitat "on the basis of the best scientific data available and after taking into consideration the economic impact, and any other relevant impact, of specifying any particular area as critical habitat." 16 U.S.C. § 1533(b)(2).

od specified in subparagraph (A) by not more than one additional year, *but not later than the close of such additional year the Secretary must publish a final regulation,* based on such data as may be available at that time, designating, to the maximum extent prudent, such habitat.

16 U.S.C. § 1533(b)(6)(C)(ii) (emphasis added).

Effective March 7, 1994, the Fish and Wildlife Service published a final rule listing the tidewater goby (*Eucyclogobious newberryi*) as an endangered species under the ESA. *Determination of Endangered Status for the Tidewater Goby,* 59 Fed.Reg. 5494, 5495 (1994). The tidewater goby is a nearly transparent, grayish-brown fish that grows up to two-inches in length and is found only in the brackish waters of California's coastal wetlands.[3] *Id.* at 5494. The life cycle of the tidewater goby is dependent upon the annual cycles of the coastal lagoons and estuaries in which it lives. Increasing coastal development, siltation, pollution, and water diversion have seriously compromised the habitat of the tidewater goby. *Id.* at 5495. As a result of the habitat changes, populations of tidewater gobies have plummeted in recent years; south of Morro Bay, tidewater goby populations have fallen by seventy-four percent. *Id.* at 5496. The proposal to list the tidewater goby was greeted with almost universal support. Of the 547 public comments submitted to the Service, only one comment opposed the listing of the tidewater goby. *See id.* at 5495.

When the Service listed the tidewater goby as an endangered species in 1994, it did not concurrently designate a critical habitat. The Service explained its decision:

> In the case of the tidewater goby, critical habitat is not presently determinable. A final designation of critical habitat requires detailed information on the possible economic effects of such a designation. The Service does not currently have sufficient information needed to perform the economic analysis.

*Id.* at 5497.[4] The Service did not suggest at the time of the listing, or at any later time, that a determination of critical habitat would not be "prudent." Under 16 U.S.C. § 1533(b)(6)(A), the Service had one year from March 7, 1994 to designate the critical habitat for the tidewater goby. The Service failed to meet this deadline.

One month after the expiration of the one-year deadline for the mandatory designation of the critical habitat of the tidewater goby, Congress passed a spending moratorium, prohibiting the Service from engaging in all Section 4 listing activities, including designation of critical habitats. *Forest Guardians v. Babbitt,* 174 F.3d 1178, 1183 (10th Cir.1999). The moratorium was extended by a series of resolutions until April 26, 1996, when Congress passed an appropriations bill permitting President Clinton to waive the moratorium. *Id.* President Clinton waived the moratorium and the Service received approximately $4 million for listing activities for the remainder of 1996. *Id.*

By the time the budget for listing activities was restored in April 1996, the Service had a backlog of 243 proposed species waiting for final listing determinations as

---

**3.** The tidewater goby are food for native species such as the prickly sculPin and the starry flounder. *See Designation of Critical Habitat for the Tidewater Goby,* 65 Fed.Reg. 69693, 69695 (2000).

**4.** At the time of the listing, the Service responded to a public comment requesting immediate designation of the tidewater goby's critical habitat by noting that it "concur[red] that [the] critical habitat should be designated." 59 Fed.Reg. at 5495.

threatened or endangered species. The Service responded to the backlog and budget constrictions by developing a Listing Priority Guidance ("LPG") to help prioritize its backlog. *Id.; Restarting the Listing Program and Final Listing Priority Guidance*, 61 Fed.Reg. 24722 (1996). Critical habitat designations were given the lowest priority. *Id.* at 24727–28. As a result of what it considered inadequate funding levels,[5] the Service extended its usage of the LPG. *Forest Guardians*, 174 F.3d at 1184. Critical habitat designations consistently remained in the lowest tier of priorities. *See Final Listing Priority Guidance for Fiscal Year 1997*, 61 Fed. Reg. 64475, 64480 (1996) (placing processing of critical habitat determinations in the lowest tier, Tier 4); *Final Listing Priority Guidance for Fiscal Years 1998 and 1999*, 63 Fed.Reg. 25502 (placing processing of critical habitat determinations in the lowest tier, Tier 3).

In September of 1998—over four years after the tidewater goby was listed as an endangered species—NRDC brought suit in district court to compel the designation of the critical habitat. NRDC sought injunctive relief based on allegations that the Service violated the ESA, the ESA's implementing regulations, and the Administrative Procedure Act ("APA") by failing to designate a critical habitat for the tidewater goby. The Service conceded that it had not designated the critical habitat, but argued that it could not comply due to budgetary restrictions. The Service asked the district court to deny injunctive relief on the ground that requiring the Service to designate a critical habitat for the tidewater goby in the near future conflicted with the Service's internal prioritization guidelines. The Service contended that by granting the injunctive relief, the district court would cause the Service to divert needed resources from higher priority activities—ultimately weakening the ability of the Service to comply with the ESA as a whole. The Service also argued that if the court granted injunctive relief, the court should enter a stay because the Service was considering delisting the tidewater goby from the ESA endangered species list.

On April 5, 1999, the district court issued an order granting summary judgment to the plaintiff and granting the plaintiff's request for injunctive relief. The district court relied on the Supreme Court case, *Tennessee Valley Authority* ("*TVA*") *v. Hill*, 437 U.S. 153, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978), which altered the test for injunctive relief in ESA cases by removing the courts' traditional equitable discretion to deny injunctive relief. The district court found that the Service violated its mandatory duty to designate a critical habitat, rejected the Service's equitable arguments, and entered the injunctive order requiring the Service to designate the tidewater goby's critical habitat within 120 days of the order. The district court rejected the Service's request that the court stay its order. The Service timely appealed.

## II.

In compliance with the district court's injunctive order, the Service published a proposed critical habitat designation for the tidewater goby on August 3, 1999. The Service published a final rule designating the habitat on November 15, 2000. Because the relief sought by the NRDC has been entirely satisfied, it is necessary

---

**5.** For fiscal year 1997, the Service requested $7.5 million for Section 4 listing activities and received $5.0 million from Congress. In 1998, the Service requested and received $5.19 million for listing activities. In 1999, the Service received $5.757 million, an amount less than requested.

first to consider whether this appeal is moot. The "case or controversy" requirement of Article III demands dismissal "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Murphy v. Hunt*, 455 U.S. 478, 481, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982). Both parties maintain, however, that this case should *not* be considered moot because it falls within the exception to mootness for cases "capable of repetition, yet evading review." I agree.

A court may exercise jurisdiction over a case that would otherwise be moot if the case is "capable of repetition but evading review." *Friends of the Earth, Inc. v. Laidlaw Ent'l Serv., Inc.*, 528 U.S. 167, 190, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). This exception to the mootness doctrine applies when: "(1) the duration of the challenged action is too short to allow full litigation before it ceases, and (2) there is a reasonable expectation that the plaintiffs will be subjected to it again." *Greenpeace v. Franklin*, 14 F.3d 1324, 1329 (9th Cir. 1993) (*citing Alaska Fish & Wildlife Fed'n v. Dunkle*, 829 F.2d 933, 939 (9th Cir. 1987)).

This case qualifies under the "capable of repetition but evading review" exception because it satisfies both elements. First, the challenged action—failure to designate a critical habitat—is limited in duration by the injunctive order of the district court requiring the Service to publish a proposed critical habitat designation within 120 days.[6] *See Brock v. Roadway Express, Inc.*, 481 U.S. 252, 258, 107 S.Ct. 1740, 95 L.Ed.2d 239 (1987) (applying the "capable of repetition yet evading review" exception because the district court's "preliminary order was too short" to allow the case to be fully litigated). In the context of other environmental cases, this court has found periods of one and two years too short to allow for appellate review and applied the exception. *See Greenpeace*, 14 F.3d at 1329–30 (finding a regulation in effect for less than one year too short to allow for appellate review); *Alaska Ctr. for the Env't v. U.S. Forest Serv.*, 189 F.3d 851, 855 (9th Cir.1999) (finding that the exception applied because a two-year permit was too short to allow for review); *cf. Northwest Res. Info. Ctr. v. Nat'l Marine Fisheries Serv.*, 56 F.3d 1060, 1070 (9th Cir.1995) (finding five-year duration sufficient to allow for review). The brief 120-day deadline imposed by the injunctive order in this case ensured that the underlying action "[was] almost certain to run its course before either this court or the Supreme Court [could] give the case full consideration."[7] *Alaska Ctr. for the Env't,*

6. This 120 day period is consistent with the time limits ordered by district courts in other critical habitat designation cases. *See Center for Biological Diversity v. Babbitt*, No. 99–3202 (N.D.Cal. Aug. 30, 2000) (Service ordered to issue a proposed critical habitat within 60 days); *Southwest Ctr. for Biological Diversity v. Babbitt*, 98–0180 (S.D.Cal. May 6, 1998) (150 days); *Southwest Ctr. for Biological Diversity v. Babbitt*, 96–2317 (D.Ariz. March 19, 1997) (120 days); *Southwest Ctr. for Biological Diversity v. Babbitt*, 967 F.Supp. 1166 (D. Ariz.1997) (120 days); *Southwest Ctr. for Biological Diversity v. Babbitt*, 98–1009 (S.D.Cal. Dec. 23, 1998) (35 days); *Defenders of Wildlife v. Rogers*, No. 96–2045 (D.Ariz. May 16, 1997) (60 days).

7. The majority states that the dissent "fails to distinguish between court orders and regulatory or statutory deadlines" when evaluating whether a challenged action is too short to allow for full litigation. Maj. Order at 614. The case law does not draw this distinction. *See, e.g., Brock v. Roadway Express, Inc.*, 481 U.S. 252, 107 S.Ct. 1740, 95 L.Ed.2d 239 (1987) ("The duration of the preliminary order was too short for [the defendant's] challenge to be fully litigated."); *Sierra Club v. Martin*, 110 F.3d 1551, 1554 (11th Cir.1997) (applying the mootness exception in an environmental case although the injunction expired because "the four-month term of the preliminary injunction was too short to allow for appellate review prior to its expiration").

189 F.3d at 855 (quoting *Miller v. California Pac. Med. Ctr.,* 19 F.3d 449, 453–54 (9th Cir.1994)).

The second element of the mootness exception is also satisfied in this case. NRDC "need only show that it is reasonable to expect that the [defendant] will engage in conduct that will once again give rise to the allegedly moot dispute." *Id.* at 856. The Service readily concedes that it systemically fails to meet the deadlines imposed by the ESA for designation of critical habitats; indeed, the heart of the Service's argument is that because it will inevitably fail to meet some of the statute's mandatory deadlines given its limited resources, it *should* fail to meet the deadlines for those activities it deems of lower priority. Based on the Service's admission that it intends to pursue a policy of giving lower prioritization to designation of critical habitats—even if this policy requires missing the statutory deadlines—I would conclude that it is reasonable to expect that the Service may again fail to designate a critical habitat for other species within the deadlines imposed by the ESA.

We were presented with a similar mootness issue in *Miller v. California Pac. Med. Ctr.,* 19 F.3d 449 (9th Cir.1994) (en banc). In that case, the appellant sought clarification of the standard applied by district courts in awarding injunctions under § 10(j) of the National Labor Relations Act. We concluded that although the case would normally be moot, it fell within the exception for cases "capable of repetition, yet evading review." *Id.* at 453.

The *Miller* analysis of the two-element test is instructive. In *Miller,* we noted: "There is no question that a § 10(j) injunction meets the first criterion [i.e., that the challenged action is in its duration too short to be fully litigated]." *Id.* As in

*Miller,* the 120–day duration of the injunctive order to designate a critical habitat for the tidewater goby is too short to be fully litigated. In *Miller,* we next determined that the dispute was reasonably likely to recur because the Board was likely to continue to litigate § 10(j) injunctions in the district court. *Id.* at 454. Similarly, in this case, environmental plaintiff organizations are likely to continue to challenge the Service's failure to designate critical habitats in federal court.

Finally, in *Miller,* we stressed that the "public interest weigh[ed] heavily in favor of our resolving the appeal" because of the importance of resolving the "confusion over the appropriate standard to be applied in § 10j proceedings." *Id.* at 454. As in *Miller,* it is important for the Service and future environmental plaintiffs to "know what criteria will be applied" in future cases challenging the Service's failure to timely designate a critical habitat. *Miller,* 19 F.3d at 454. The Service represented to the court in its motion to expedite oral argument that the "number of ESA missed-deadline cases is growing at an explosive rate," and stated that even "if the Court finds against the Service on this important legal issue, resolution at the appellate level, at least, would relieve the Service from expending its resources on litigating the issue." [8]

The majority does not contend that this case fails either of the two elements required for application of the "capable of repetition, yet evading review" exception. Instead, without citation, the majority adds a new element to this mootness exception. According to the majority, to demonstrate that a case falls within the exception, the parties must seek a stay of the injunction pending appeal. Under the majority's analysis, if the stay of the injunction pending appeal is granted, the moot-

8. According to the Service, there are at least twenty cases within this circuit from the last two years which raise the legal issue presented in this appeal.

ness problem could be avoided. Because the Service failed to explore this possibility, which could have avoided the mootness problem, the majority does not consider this case one "capable of repetition, yet evading review." The majority concludes that the exception does not apply on the ground that in another case challenging the Service's failure to designate a critical habitat, another district court may deny the injunction, or another court might grant a stay pending appeal.

The majority's argument that a future case challenging the Service's failure to designate a critical habitat may avoid the mootness problem has no support in the history of these cases.[9] As the Service concedes, in the numerous cases raising the merits issue on appeal before this court, no district or circuit court has ever ruled in favor of the Service.[10] The majority's suggestion that the Service seek a stay pending appeal would be particularly futile in this case.[11] The only issues on appeal are whether the district court's injunctive order was appropriate, and whether the district court erred by failing to grant the Service a stay. The district court—after thoroughly analyzing whether a stay was warranted—rejected the four-month stay requested by the Service. To determine whether a stay pending appeal would be appropriate, this court would have to decide the precise issue raised in this appeal: whether the district court erred by denying the stay. *See* JUDGE DOROTHY NELSON ET AL., FEDERAL NINTH CIVIL CIRCUIT APPELLATE PRACTICE § 6:267 (2001) ("The standard ... applied by the Ninth Circuit in ruling on motions for stays and injunctions pending appeal ... is comparable to that used by a district court in evaluating a motion for preliminary injunction."). It is difficult to imagine what issues would remain on appeal after a panel of this court determined whether or not to award the stay.

Thus, I believe that this case qualifies as an exception to the mootness doctrine because the legal issue it raises is "capable of repetition, yet evading review." I now turn to consider the merits of the case.

### III.

The Service contends that the district court applied the wrong legal standard in granting injunctive relief, and failed adequately to consider the Service's equitable arguments. In this section, I first set forth the standard for injunctive relief in a citizen suit brought to enforce the ESA. I

**9.** The majority's reliance on *Center for Biological Diversity v. Norton,* 254 F.3d 833 (9th Cir.2001) is misplaced. In the instant case, the Service concedes that it failed its statutorily imposed duty to designate the critical habitat for the tidewater goby by the mandatory deadline. The instant case centers on whether injunctive relief was appropriate. In contrast, the Service contended in *Center for Biological Diversity* that it had satisfied its statutory obligation under 16 U.S.C. § 1533(b)(3)(A) of the ESA to issue findings in response to citizen petitions to list species as endangered. *Id.* at 836. The District Court in *Center For Biological Diversity* agreed that the Service satisfied the statutory requirements, and accordingly denied the plaintiff's motion to compel the Secretary to issue the findings. *Id.* at 836. The majority does not cite to an ESA case where injunctive relief was denied despite a finding that the plaintiffs succeeded on the merits, as was the case here.

**10.** To obtain a stay pending appeal, the moving party must demonstrate at least a fair chance of success on the merits and that the balance of hardships tips in its favor. *See Artukovic v. Rison,* 784 F.2d 1354, 1356 (9th Cir.1986); *Gilder v. PGA Tour, Inc.,* 936 F.2d 417, 422 (9th Cir.1991).

**11.** The parties in this case sought to expedite oral argument in order to avoid the potential mootness problem. This procedural device is encouraged by our circuit as an alternative to the filing a stay. *See* Circuit Rule 27–12.

then consider the Service's challenges to the application of this standard, including the Service's arguments that its adherence to internal priority guidelines and limited funding warranted denial of injunctive relief. I conclude that none of the Service's equitable arguments require adjustment of the injunctive relief standard for ESA cases, nor merit denial of the injunctive order because of "exceptional circumstances."

### Standard of Review

Our court reviews for an abuse of discretion the district court's decision to grant a permanent injunction. *Dare v. California,* 191 F.3d 1167, 1170 (9th Cir.1999). Our court reviews de novo, however, the rulings of law relied upon by the district court in granting an injunction. *Hilao v. Estate of Marcos,* 95 F.3d 848, 850 (9th Cir.1996).

### A.

NRDC sought injunctive relief under the ESA citizen suit provision, 16 U.S.C. § 1540(g)(1)(C) [12] and the Administrative Procedures Act (APA), 5 U.S.C. § 706. [13] Title 16 of the United States Code, § 1540(g)(1)(C) provides for judicial review by the district court over violations of 16 U.S.C. § 1533, which requires the Service to list endangered and threatened species and designate their critical habitats. *Bennet v. Spear,* 520 U.S. 154, 160, 117 S.Ct.

1154, 137 L.Ed.2d 281 (1997). The APA "by its terms independently authorizes review only where 'there is no other adequate remedy in a court.'" *Id.* at 161–62 (quoting 5 U.S.C. § 704). Because the ESA provides for judicial review of violations of § 1533 and provides a remedy, and because this is an ESA case, it is appropriate to adhere to the line of cases that establish a special test for injunctive relief under the ESA.

Traditionally, to warrant permanent injunctive relief, the plaintiff must establish actual success on the merits and that the balance of equities tips in its favor. *See Amoco Prod. Co. v. Vill. of Gambell, Alaska,* 480 U.S. 531, 542, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987) ("[A] court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the [injunctive] relief."); *Walters v. Reno,* 145 F.3d 1032, 1048 (9th Cir.1998). In a landmark opinion, *TVA v. Hill,* 437 U.S. at 193–95, the Supreme Court altered how courts should exercise equitable relief in ESA suits. The plaintiffs brought suit to enjoin the Tennessee Valley Authority ("TVA") from opening a nearly completed dam because the dam would have destroyed the habitat of an endangered species, the snail darter. *Id.* at 158. The TVA requested that the Court exercise its discretion to shape a more moderate remedy. *Id.* at 194.

---

**12.** The ESA citizen suit provision states:

(1) Except as provided in paragraph (2) of this subsection any person may commence a civil suit on his own behalf—

—

(C) against the Secretary where there is alleged a failure of the Secretary to perform any act or duty under section 1533 of this title which is not discretionary with the Secretary.
The district court shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce any such provision or regulation, or

to order the Secretary to perform such act or duty, as the case may be.
16 U.S.C. § 1540(g)(1).

**13.** 5 U.S.C. § 706(1) provides:

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall ... compel agency action unlawfully withheld or unreasonably delayed.

In deciding *TVA*, the Supreme Court discussed the traditional function of courts to balance equities and noted that federal judges are "not mechanically obligated to grant an injunction for every violation of the law," but then found that "these principles take a court only so far." *Id.* at 193–94. Under the separation of powers doctrine, the Court observed that the role of the courts is to enforce the law, not to reformulate the directives of Congress. *Id.* at 194. The Court found that the clear objectives and language of Congress in passing the ESA removed the traditional discretion of courts in balancing the equities before awarding injunctive relief: "Congress has spoken in the plainest of words, making it abundantly clear that the balance [of equities] has been struck in favor of affording endangered species the highest of priorities." *Id.* Subsequent Supreme Court cases reinforced the holding of *TVA* that, in the context of the ESA, "Congress [ ] foreclosed the exercise of the usual discretion possessed by a court of equity." *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 313, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982) (describing the holding of *TVA* and distinguishing the availability of discretion under ESA suits from other environmental statutes); *Amoco Prod. Co.*, 480 U.S. at 542 n. 9, 544–45.

In *Sierra Club v. Marsh*, 816 F.2d 1376, 1383 (9th Cir.1987), our circuit construed the language from *TVA* to foreclose consideration of equitable factors under § 7 of the ESA. In *Marsh*, this court found that because Congress's intent under § 7 was to halt federal projects that "jeopardize the continued existence of endangered species," courts "may not use equity's scales to strike a different balance." *Id.* In other words, the traditional test for injunctive relief "is not the test for injunctions under the Endangered Species Act." *Nat'l Wildlife Fed'n v. Burlington N. R.R., Inc.*, 23 F.3d 1508, 1510 (1994).

In *Marsh*, this court described the importance of injunctive relief to enforcement of the ESA:

> Congress has established procedures to further its policy of protecting endangered species. The substantive and procedural provisions of the ESA are the means determined by Congress to assure adequate protection. Only by requiring substantial compliance with the act's procedures can we effectuate the intent of the legislature.

*Id.* at 1384. Following this discussion, we announced that plaintiffs are entitled to injunctive relief under the ESA if they demonstrate a substantive or procedural violation of the Act. *Id;* *see also Marbled Murrelet v. Babbitt*, 83 F.3d 1060, 1073 (9th Cir.1996).

The Service concedes that under *Marsh* and *TVA*, the equitable discretion of courts is limited in ESA cases.[14] The Service contends that while consideration of some

---

**14.** The Service also argues that this case differs from *TVA* and *Marsh* because those cases involved § 7 of the ESA. Section 7 requires federal agencies: (1) to consult with the Secretary in order to avoid actions that would jeopardize the species, or destroy or adversely modify their habitat; and (2) to avoid taking endangered species unless the harm is minimal and unavoidable. *See* 16 U.S.C. § 1536(a)(2). The Service's argument that Section 4 critical habitat designations should be treated differently from Section 7 activities is undercut by the fact that the Sections are interdependent. *See Natural Res. Def. Council v. United States Dept. of the Interior*, 113 F.3d 1121, 1123 (9th Cir.1997) ("Designation of critical habitat in turn triggers the protections of Section 7."); *see also* H.R. REP. No. 94–887, at 3 (1976) ("[C]lassifying a species as endangered or threatened is only the first step in insuring its survival. Of equal or more importance is the determination of the habitat necessary to that species' continued existence. Once a habitat is so designated, the Act requires that proposed Federal actions not adversely affect the habitat.").

factors—such as the economic effects of halting development—is foreclosed by *TVA*, courts maintain discretion to consider other factors, such as the effect of competing demands on the Service's resources.

The Service hinges the distinction between the types of considerations that *TVA* prohibits and the types that *TVA* permits on whether the considerations further the purpose of the ESA. Under the Service's reading, *TVA* and *Marsh* only remove discretion from the district court to consider those factors contrary to the purpose of the ESA. The Service argues that *TVA* and *Marsh* leave open the possibility that the district court retains discretion to consider factors that advance the purpose of the ESA—such as the Service's argument that by granting injunctive relief the district court ultimately undermines the Service's ability to carry out other critical activities under the ESA.

The Service's argument ignores the separation of powers element of the Court's decision in *TVA*. The Supreme Court ordered an injunction in *TVA* without balancing the hardships, holding:

> [I]n our constitutional system the commitment to the separation of powers is too fundamental for us to preempt congressional action by judicially decreeing what accords with "common sense and the public weal." Our Constitution vests such responsibilities in the political branches.

*TVA*, 437 U.S. at 195. *TVA* instructs that courts should not tamper with the clear directives of the ESA by re-weighing the importance of compliance with the Act's procedural and substantive mandates. *Id.* at 194.

Congress unambiguously required designation of critical habitat within a strict deadline: the statute provides that the Secretary "must publish" the final regulation designating the critical habitat within one year. 16 U.S.C. § 1533(b)(C)(ii). The

legislative history of the ESA and subsequent amendments suggest that Congress considered designation of critical habitats an activity of crucial importance. The ESA was enacted in the context of Congressional recognition that the greatest threat to endangered species was the "destruction of natural habitats." *TVA*, 437 U.S. at 179. Proponents of the Act advocated that Congress require federal agencies "to avoid damaging critical habitat for endangered species and to take positive steps to improve such habitat." *Id.* (quoting 1983 House Hearings 241). "[T]he ultimate effectiveness of the Endangered Species Act will depend on the designation of critical habitat." H.R. REP. No. 94–887, at 3 (1976). If, as the Service contends, designation of critical habitats is of limited utility, it is the role of Congress, not the courts, to amend the Act.

In every routine suit seeking an injunctive order against the Service for failure to perform a mandatory listing duty under Section 4 of the ESA, courts have entered injunctive orders against the Service without balancing the hardships. *See Biodiversity Legal Found. v. Badgley*, No. 98–1093, 1999 WL 1042567, at *6–*7 (D.Or. Nov.17, 1999) (rejecting the Service's LPG argument and ordering the Service to complete twelve-month findings required by § 1533 for the redband trout, the yellowlegged frog, and the Spalding's catchfly); *Marbled Murrelet v. Babbitt*, 918 F.Supp. 318, 322–23 (W.D.Wash.1996) (ordering the Service to designate a critical habitat for the marbled murrelet despite limited funds); *Silver v. Babbitt*, 924 F.Supp. 972, 976 (D.Ariz.1995) (rejecting limited funds argument and ordering the Service to designate critical habitat); *Southwest Ctr. for Biological Diversity v. Clark*, 90 F.Supp.2d 1300, 1313 (D.N.M.1999) (ordering the Service to designate a critical habitat for the spike dace and loach minnow because the Service's failure to comply "cannot be sanctioned or excused").

I agree with the Service, however, that in passing the ESA, Congress did not strip the district court of all of its equitable powers. Although the clear congressional directive to enforce the requirements of the Act compels injunctive relief in most cases, unusual circumstances may require that a district court deny injunctive relief for a violation of a non-discretionary duty. *See Marsh*, at 1384 n. 11 (acknowledging that even under the limited discretion test for ESA suits, injunctive relief may be inappropriate in cases of "rare or unusual circumstances").[15]

The only case to lift an injunctive order against the service for failure to designate a critical habitat, *Environmental Def. Ctr. v. Babbitt*, 73 F.3d 867 (9th Cir.1995), found that the congressional appropriation rider imposing a moratorium on using funds for listing activities prevented the Service from complying. *Id.* at 871 ("[The rider] necessarily restrict[s] the Secretary's ability to comply with this duty by denying him funding."). The court noted that absent the rider, the "EDC would prevail" in its "suit to compel the Secretary to make and publish a final determination." *Id.* at 869. The moratorium easily falls within the "rare or exceptional circumstance" category and explains the court's decision not to order injunctive relief.

The language of the ESA that imposes deadlines for action "could hardly be more clear." *Oregon Natural Res. Def. Council, Inc. v. Kantor*, 99 F.3d 334, 338–39 (9th Cir.1996). Like violations of mandatory duties imposed by Section 7, violations of deadlines for mandatory duties under Section 4 of the ESA should be remedied through injunctive relief absent unusual circumstances.

### B.

The Service advances several arguments for why the rigid test for injunctive relief in ESA suits should not apply here. The Service contends that: (1) its duty to designate a critical habitat conflicts with its duty to prioritize its activities; (2) inadequate resources justify the missed deadlines; (3) this court should import a set of discretionary factors into the analysis; and (4) its contemplation of a proposal to delist the tidewater goby should have excused its failure to meet the statutory deadline. I consider each of these arguments in turn.

First, the Service argues that its mandatory duty to designate a critical habitat within the statutory deadline conflicts with its duty under 16 U.S.C. § 1533(h) to prioritize its activities. This argument lacks merit for the simple reason that the language of § 1533(h) does not authorize the Service to prioritize activities in a way that conflicts with the other statutory provisions. In relevant part, § 1533(h) directs the Service to establish "agency guidelines to insure that the purposes of this section are achieved efficiently and effectively." The section identifies four specific guidelines that the Service should adopt, including "a ranking system to assist in the identification of species that should receive

---

**15.** In *Marsh* we noted that this test was the general test for injunctive relief in the Ninth Circuit for all environmental statutes until the Supreme Court decided *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987). *See Marsh*, 816 F.2d. at 1384. The Supreme Court held that in a suit under the Alaska National Interest Lands Conservation Act (ANILCA), courts must balance the equities and ask whether other effective relief is available, the traditional test for permanent injunctive relief. *Amoco*, 480 U.S. at 542–44. As discussed above, the Supreme Court distinguished the ESA and the Court's decision in *TVA* from the structure and language of ANILCA. *Id.* at 543 n. 9. In *Marsh*, we relied upon this distinction to hold that the ESA limits courts' discretion in awarding injunctive relief. *Marsh*, 816 F.2d at 1384.

priority review under subsection (a)(1) of this section." 16 U.S.C. § 1533(h)(3).

The Service relies on these directives to argue that adherence to its own internal priority guidelines—which afford critical habitat designation the lowest priority— should trump its mandatory duty to designate critical habitats within the statutory deadline. The first problem with this argument is that neither of these statutory provisions require the Service to adopt guidelines prioritizing *activities*. In contrast, by the clear language of the statute, the Service is required to adopt guidelines prioritizing *species*. The Service in this case did not argue that it failed to designate a critical habitat within the statutory deadline because the tidewater goby was a lower priority on its list of species; rather, the Service argues that it should not have to designate critical habitats for *any* species—including the tidewater goby—until it has finished with the activities it deems more important.[16]

Nor does the language of § 1533(h), which directs the Service to adopt guidelines to "insure that the purposes of the section are achieved efficiently and effectively," permit the Service to violate clear statutory requirements. Certainly this language encourages the Service to adopt internal tools for managing its mandatory duties and guiding its decision making for discretionary determinations. The language does not, however, alter the mandatory quality of the requirements of § 1533(h). The Service can not postpone its duty to designate a critical habitat by relying upon § 1533(h).

The Service also argues that its limited funding necessitates its adherence to the listing priority guidelines. In the wake of the one-year funding moratorium and multiple years of limited funding by Congress, the Service contends that it simply can not meet all of its mandatory duties under the ESA. Because of the inadequate funding, the Service has not voluntarily designated a critical habitat for a single species since the adoption of its Listing Priority Guidance in 1996. The Service thus argues that the inadequate resources are an exceptional circumstance.

Without commenting on the merits of Service's contention that designating critical habitats has lesser utility than the other Section 4 ESA activities, I would disagree that the Service's internal prioritizations transform mandatory ESA duties into discretionary ones. This case involves the narrow issue whether the district court appropriately required the Service to designate a critical habitat for the tidewater goby. To excuse the Service's failure to act in this case because of the listing Priority Guidelines would necessarily endorse the Service's failure to designate critical habitats generally. Inadequate resources—a problem far from unique to the Fish and Wildlife Service[17] —are simply not sufficient to qualify as the type of "unusual circumstances" that

---

16. The fundamental disagreement between the parties is not over the relative importance of the tidewater goby, but over the relative importance of designating critical habitats for any species. This court has never before sanctioned the rewriting of a federal statute by an agency based on arguments of limited funding. To condone the Service's categorical failure to designate critical habitats would invite federal agencies to vitiate Congress's lawmaking power.

17. *See e.g., Salameda v. INS*, 70 F.3d 447, 452 (7th Cir.1995) (concluding that although the court may seem "awfully unforgiving of the recourse constraints that prevent the judicial officers of the immigration service from doing a competent job ... understaffing is not a defense to a violation of principles of administrative law"); Richard J. Pierce, Jr., *Judicial Review of Agency Actions in a Period of Diminishing Agency Resources*, 49 ADMIN. L. REV. 61, 61–69 (1997) (discussing generally the problem created by the gap between funding and legislation for almost all areas of

would require courts to re-weigh the equities in granting injunctive relief under the ESA. I would hold that inadequate resources and the Service's reliance on its listing priority guidelines do not justify its failure to designate a critical habitat for the tidewater goby.

The Service next urges that the court import the so-called "TRAC" factors into the injunctive relief test for ESA cases. The "TRAC factors" were established in a case decided by the Court of appeals for the District of Columbia, *Telecomm. Research & Action Ctr. v. F.C.C.*, 750 F.2d 70 (D.C.Cir.1984). The factors include the time involved to make decisions, whether human health and welfare are at stake, the effect of requiring the action on other agency priorities, the interests prejudiced by the delay, and the reasons for the agency's delay. *See id.* at 79–80. The TRAC factors are a useful tool to help courts decide whether agency action is "unreasonably delayed," but are of less utility in cases where the agency has violated a mandatory timeline.[18]

In *Forest Guardians*, the Tenth Circuit rejected the Service's identical argument that the TRAC factors should apply to the Service's failure to designate a critical habitat based on the mandatory nature of the Service's duty. 174 F.3d at 1191. The Service's suggestion that courts import the

TRAC factors to evaluate clear, mandatory statutory deadlines is an invitation to courts to erode the plain meaning of the statute.

The TRAC factors are particularly inappropriate in the context of an ESA case. As explained above, Congress clearly intended to protect endangered species by the means of the strong procedural and substantive protections of the ESA. *See Marsh*, 816 F.2d at 1384. Adopting a framework that considers outside factors, such as the TRAC factors, would undermine Congress's intent that the provisions of ESA be strictly enforced. The unequivocal language of the ESA states that the Service's obligation to designate a critical habitat is mandatory. Thus, I would decline to hold that courts should apply the TRAC factors when evaluating whether to grant injunctive relief in ESA suits.

The Service's final argument, that it was contemplating delisting the tidewater goby, is equally unavailing. At the time of the district court's ruling, the Service had not yet published a proposed rule delisting the tidewater goby, nor had the Service accepted public comments or held public hearings on the proposal.[19] As the trial court pointed out, denying injunctive relief based on mere speculation of delisting, absent even a circulation of the draft proposal for public comment,[20] would contra-

administrative law); Patricia M. Wald, *Judicial Review in the Time of Cholera*, 49 AD-MIN. L. REV. 659, 662 (1997) ("I am not sure that the agencies' shrinking resources are a good reason to tilt the formulas in one direction rather than the other. If an agency cannot do its required work in a way that meets appropriate judicial standards, the showdown ought to be between the agency and Congress, where the problem originates.")

18. The only cases that apply the TRAC factors to agency failure to meet a mandatory time line are those in which the plaintiff petitions for a writ of mandamus. *See, e.g., In re*

*United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 549 (D.C.Cir.1999) (applying the TRAC factors to petition for mandamus for violation of an express timetable in the Mine Act).

19. The steps for delisting include publishing a proposed rule in the federal register, a notice and comment period, and a final rule that responds to the public's views. *See* 16 U.S.C. § 1533(b)(4); *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1404 (9th Cir.1995).

20. On June 24, 1999, the Service published a proposal to remove only the northern populations of the tidewater goby from the endan-

dict the strong language of the ESA requiring the Service to act and the courts to provide enforcement. The district court appropriately concluded that none of the Service's equitable arguments justified granting a stay to the Service.

## IV.

I would find that this case falls within the exception to the mootness doctrine for those cases "capable of repetition, yet evading review." On the merits, I would hold that barring unusual or exceptional circumstances, district courts should award injunctive relief in ESA suits for failure to comply with mandatory deadlines imposed by Section 4. Under this standard, I would conclude that inadequate resources are not an unusual circumstance, and affirm the district court's order requiring the Service to designate a critical habitat for the tidewater goby.

gered species list. 64 Fed.Reg. 33816. The proposal has not been finalized. I note that the Service factored this proposal into its final designation of critical habitat for the tidewater goby. 65 Fed.Reg. 69693, 69698 ("Our critical habitat designation must take into

consideration the fact that the current information indicates that the tidewater goby populations north of Orange County are not in danger of extinction or likely to become so in the foreseeable future.").