**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CENTER FOR BIOLOGICAL DIVERSITY;
PACIFIC RIVERS COUNCIL,
            *Plaintiffs-Appellants,*

           v.

DIRK KEMPTHORNE,* Secretary of
the Interior; STEVEN WILLIAMS,
Director of the United States Fish
and Wildlife Service,
            *Defendants-Appellees.*

No. 04-16563

D.C. No.
CV-03-01758-
GEB/DAD

OPINION

Appeal from the United States District Court
for the Eastern District of California
Garland E. Burrell, District Judge, Presiding

Argued and Submitted May 17, 2006
Submission Vacated May 22, 2006
Resubmitted October 18, 2006
San Francisco, California

Filed October 18, 2006

Before: Pamela Ann Rymer and Kim McLane Wardlaw,
Circuit Judges, and William Alsup,** District Judge.

Opinion by Judge Rymer

---

*Dirk Kempthorne is substituted for his predecessor, Gale Norton, as
Secretary of the Interior, pursuant to Fed. R. App. P. 43(c)(2)

**The Honorable William Alsup, United States District Judge for the
Northern District of California, sitting by designation.

**COUNSEL**

Michael R. Sherwood (argued) and Susan Britton (signed the briefs), Earthjustice, Oakland, California, for the plaintiffs-appellants.

David C. Shilton, U. S. Department of Justice, Environment & Natural Resources Division, Washington, D.C., for the defendants-appellees.

**OPINION**

RYMER, Circuit Judge:

The Center for Biological Diversity and the Pacific Rivers Council (collectively, the Center) appeal the district court's summary judgment in favor of the Secretary of the Interior,[1] and the Director of the U.S. Fish and Wildlife Service (collectively, the Service) in this suit under the Endangered Species Act (ESA). 16 U.S.C. § 1531 et seq. The Center challenges the Service's finding under 16 U.S.C. § 1533(b)(3)(B)(iii) that listing of the Sierra Nevada Mountain Yellow-Legged Frog (the Frog) as an endangered species is "warranted but precluded." For such a finding, §§ 1533(b)(3)(B)(iii)(I) and (II) require the Service to identify proposals for other listings that preclude listing the Frog and to find that expeditious progress is being made to list qualified species. Although the Service did not do so in its decision, the district court upheld the finding of "warranted but precluded" because the Service's path could reasonably be discerned. We conclude that this option is not available under the ESA, which expressly directs the Service, when making a "warranted but precluded" finding, to "publish such finding in the Federal Register, together with a

---

[1] Subsequent to the district court's decision, Gale Norton resigned and the United States Senate confirmed Dirk Kempthorne to replace her as Secretary of the Interior.

description and evaluation of the reasons and data on which the finding is based." 16 U.S.C. § 1533(b)(3)(B). As this wasn't done, we reverse for remand to the Service.

I

On February 8, 2000, the Center petitioned the Service to list the Frog as an endangered species under the ESA. The petition asserted that the Frog was once the most abundant frog in the Sierra Nevada region, but its population had declined sharply in recent decades, and it had already vanished from many areas in its historic range. On October 12, 2000, the Service responded to the Center's petition by publishing an initial 90-day finding that the petition presented substantial information indicating that listing the species may be warranted. 90-Day Finding on a Petition to List the Mountain Yellow-Legged Frog as Endangered, 65 Fed. Reg. 60,603 (Oct. 12, 2000). It initiated a status review to determine whether listing under the ESA was appropriate.

Under 16 U.S.C. § 1533(b)(3)(B), the Service had twelve months from the date of receipt of the petition to complete this review. The Service failed to make a finding within this window, and the Center filed suit in the Northern District of California. The district court issued an order requiring the Service to comply with its statutory obligation by January 10, 2003. *Ctr. for Biological Diversity v. Norton ("Frog I")*, 2001 WL 1602696 (N.D. Cal. Dec. 12, 2001). The Service missed the court-imposed deadline, but on January 16, 2003, published its 12-month finding. *See* 12-Month Finding for a Petition to List the Sierra Nevada Distinct Population Segment of the Mountain Yellow-Legged Frog (*Rana muscosa*), 68 Fed. Reg. 2,283 (Jan. 16, 2003) (the Frog Decision).

The Frog Decision documented the scientific research that the Service reviewed concerning the Frog's taxonomy, physical description, range, habitat requirements, current status, population segments, and the effect of this species' extinction.

It also surveyed the suspected factors affecting the Frog's population, including grazing, recreation, dams and water diversion, roads and timber harvest, fire management activities, predation, and disease, and evaluated federal land management policies that could be affecting the Frog. Based on the scientific data, the Service found that the Frog populations were declining and that, due to their isolation, populations of Frogs that become extinct are unlikely to recolonize. It further found that "the overall magnitude of threats to the [Frog] is high, and that the overall immediacy of these threats is imminent." The Service therefore concluded that listing the Frog as an endangered species was warranted.

Nevertheless, the Service found that listing the Frog was "precluded by other higher priority listing actions." The ESA allows a "warranted but precluded" finding if the Service finds that (1) "the immediate proposal and timely promulgation of a final regulation implementing the petitioned action . . . is precluded by pending proposals to determine whether any species is an endangered species or a threatened species," 16 U.S.C. § 1533(b)(3)(B)(iii)(I); and (2) "expeditious progress is being made to add qualified species to either of the lists published under . . . this section and to remove from such lists species for which the protections of this chapter are no longer necessary," 16 U.S.C. § 1533(b)(3)(B)(iii)(II). The Service explained its decision not to list the Frog as follows:

> While we conclude that listing the [Frog] is warranted, an immediate proposal to list is precluded by other higher priority listing actions. During Fiscal Year 2003 we must spend nearly all of our Listing Program funding to comply with court orders and judicially approved settlement agreements, which are now our highest priority actions. To the extent that we have discretionary funds, we will give priority to using them to address emergency listings and listing actions for other species with a higher priority. Due to litigation pertaining to various listing actions, our

planned work with listing funds in Fiscal Year 2003 consists primarily of addressing court-ordered actions, court-approved settlement agreements, and listing actions that are in litigation. (Also, some litigation-related listing actions already are scheduled for Fiscal Year 2004.) We expect that our discretionary listing activity in Fiscal Year 2003 will focus on addressing our highest priority listing actions of finalizing expiring emergency listings.

68 Fed. Reg. at 2,303. Having decided not to list the Frog, the Service designated it as a "candidate" for future listing and assigned the species a priority ranking of "3" on the 12-level Listing Priority Guidance scale (with "1" being an emergency and "12" being the lowest priority). *Id.*

"A candidate is one for which [the Service has] on file sufficient information on biological vulnerability and threats to support a proposal to list as endangered or threatened but for which preparation and publication of a proposal is precluded by higher-priority listing actions." Review of Species That Are Candidates or Proposed for Listing as Endangered or Threatened; Annual Notice of Findings on Recycled Petitions; Annual Description of Progress on Listing Actions, 67 Fed. Reg. 40,657, 40,658 (June 13, 2002) (2002 CNOR). The Service annually publishes an update of the review status of species that are candidates for listing, 50 C.F.R. § 424.15(b), called a Candidate Notice of Review (CNOR). CNORs provide information regarding the status of the listing program as a whole and progress that is being made on the listing backlog.

The 2002 CNOR was published June 13, 2002, prior to the Frog Decision, 67 Fed. Reg. 40,657, but the Frog was included in the 2003 CNOR in light of its designation as a candidate.[2] The 2002 CNOR describes why listing of all petitioned

---

[2]The 2003 CNOR was published in the Federal Register on May 4, 2004. Review of Species That Are Candidates or Proposed for Listing as

candidate species as of that time was warranted but precluded, and forecasts that for fiscal year 2003 the Service's anticipated listing budget will be needed to take listing actions to comply with court orders and court-approved settlement agreements. The 2002 CNOR identifies the particular species on which the Service will work in the coming year, and reports that since October 30, 2001 final listing actions for six species had been published as well as proposed listing actions for ten species and delisting actions for three species. It also finds that given budget constraints, "these achievements constitute expeditious progress." *Id.* at 40,672.

The Center's present action challenges the Service's "warranted but precluded" finding and seeks to compel the Service to list the Frog. Ruling on cross-motions for summary judgment, the district court looked to the 2002 CNOR's description of listing actions that were then pending, and the anticipated listing budget for Fiscal Year 2003. The court concluded that the Service's reasons for its finding that listing of the Frog was "precluded by pending proposals" could be reasonably discerned from these documents, which show that the Service's budget is being consumed by specific pending actions. The court also concluded that an implied finding of "expeditious progress" was made — and that the Service's

Endangered or Threatened; Annual Notice of Findings on Resubmitted Petitions; Annual Description of Progress on Listing Actions, 69 Fed. Reg. 24,876 (May 4, 2004) (2003 CNOR). (Another CNOR, for 2004, has since been issued. Review of Species That Are Candidates or Proposed for Listing as Endangered or Threatened; Annual Notice of Findings on Recycled Petitions; Annual Description of Progress on Listing Actions, 70 Fed. Reg. 24,870 (May 11, 2005) (2004 CNOR).) Neither the 2003 (nor 2004) CNOR is in the administrative record; however, the Service suggests that the 2003 CNOR is a judicially-noticeable document which has been relied upon by both parties in this litigation. We express no view on this, as we conclude that the ESA requires a description of the reasons and data on which a "warranted but precluded" finding is made to be filed with the finding — which, of course, the 2003 CNOR could not possibly have been.

reasons for it were reasonably discernable — from the June 13, 2002 CNOR, the Fiscal Year 2003 budget projections, and an internal Department of Interior Effect Statement. These documents are part of the administrative record but are not referred to in the decision. The district court then determined that neither finding was arbitrary, and entered judgment for the Service.

The Center timely appealed.

II

**[1]** The ESA clearly prescribes that when the Service makes a "warranted but precluded" finding, it "shall promptly publish such finding in the Federal Register, together with a description and evaluation of the reasons and data on which the finding is based." 16 U.S.C. § 1533(b)(3)(B). We take this directive at face value. It means that the Service cannot make a "warranted but precluded" finding without publishing a description and evaluation of its reasons and data *together with* the finding.

**[2]** We have already indicated that the circumstances under which the Secretary may invoke the excuse of "warranted but precluded" are "narrowly defined." *Ctr. for Biological Diversity v. Norton ("Gila Chub")*, 254 F.3d 833, 838 (9th Cir. 2001). Implementing the petitioned action (here, listing the Frog) must be precluded by pending proposals *and* expeditious progress must be being made to list qualified species and delist those for whom ESA's protections are no longer necessary. 16 U.S.C. § 1533(b)(3)(B). As we elaborated in *Gila Chub*, the Service must show that it "is actively working on other listings and delistings and must determine and publish a finding that such work has resulted in pending proposals which *actually* preclude proposing the petitioned action at that time," and "must determine and present evidence that [it] is, in fact, making, expeditious progress in the process of listing and delisting other species." *Gila Chub*, 254 F.3d at 838

(quoting H. Conf. Rep. No. 97-835, at 22 (1982), *reprinted in* 1982 U.S.C.C.A.N. 2860, 2863 (alteration omitted)).

**[3]** It follows from § 1533(b)(3)(B) and *Gila Chub* that these determinations — work on other listings that actually precludes listing the Frog, and expeditious progress — must be part of the published findings. The Frog Decision contains no determination at all that expeditious progress in listing or delisting other species is being made. While the Service did find that the Frog proposal is precluded by other higher priority listing actions, the Decision contains no description or evaluation of the data or reasons why listing the Frog is actually precluded. Accordingly, this is not a case where we can "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quoting *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974)).

**[4]** The Service argues that its statement in the Frog Decision that listing was precluded due to the need to complete actions required by court orders and settlement agreements, and to focus discretionary listing activity in Fiscal Year 2004 on finalizing expiring emergency listings, was supported by detailed statements made six months earlier in the 2002 CNOR. Even if this were correct (and we express no opinion on it), a document published in June, 2002 is not published *together with* a finding published in January, 2003. In addition, as the Frog Decision makes no reference to the 2002 CNOR, there is no way to tell whether the Frog Decision was in fact made for the reasons and based upon the data set out in that review. If the grounds in the Decision itself are inadequate, we are "powerless to affirm the administrative action by substituting what [we] consider[ ] to be a more adequate or proper basis." *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947). Nor is there any way to tell from the Frog Decision that nothing had changed in the interim. Even if nothing did change (again, we express no opinion on it), we uphold

administrative decisions only when they are not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Ariz. Cattle Growers' Ass'n v. U.S. Fish & Wildlife*, 273 F.3d 1229, 1236 (9th Cir. 2001) (quoting 5 U.S.C. § 706(2)(A)). The reasoning and data of the 2002 CNOR should have been part of the Frog Decision, or the two documents should have been published together — as they are supposed to be under the ESA — if they are to be considered together for purposes of appellate review. *See Gila Chub*, 254 F.3d at 839 (noting that the published "warranted but precluded" findings provide public notice and provide the basis for review). Here, however, we can't get to the substance of the agency's position because it did not comply with the procedure required by § 1533(b)(3)(B) and *Gila Chub.*

On the similar footing that the administrative record also makes clear that the Service considered the "expeditious progress" that had been made, the Service maintains that it was reasonable to determine progress by considering the full range of its activities and that this is best done during the annual review of candidate listing status. Again, it may be that the homework was done, but it has to be turned in to count. Section 1533(b)(3)(B) states that "the Secretary *shall* make" findings that a petition is warranted but that "expeditious progress is being made . . . ." (emphasis added). The finding isn't optional. Neither do we believe that it may be implied based on information in the administrative record that the Decision does not identify, because § 1533(b)(3)(B)(iii) not only conditions a finding that the petitioned action is "warranted but precluded" on a determination of "expeditious progress," but it requires that that finding be published *together with* a description and evaluation of the reasons and data upon which it is based. We therefore cannot agree with the Service that without more, findings in the published CNOR fulfill the requirements of § 1533(b)(3)(B)(iii) for published findings supported by reasons and data.[3]

---

[3]The Service seeks to distance the Frog Decision from *Gila Chub* by pointing out that the notice we faulted in *Gila Chub* was a one-liner desig-

Alternatively, the Service submits that if the finding in the Frog Decision were deficient for not expressly stating its determination that it was making "expeditious progress," any such deficiency was cured by the 2003 CNOR which renewed the "warranted but precluded" finding for the Frog and other species. The 2003 CNOR fails the statutory test if for no other reason than it was issued May 4, 2004, and cannot possibly have been published together with the "warranted but precluded" finding published January 16, 2003. Beyond this, to rely upon a finding made a year or more later than the decision under review would "propel the court into the domain which Congress has set aside exclusively for the administrative agency" by substituting a new ground for the one upon which the agency relied at the time. *See Chenery*, 332 U.S. at 196. And, to do so in this case would also undermine the agency's statutory duty to make express findings within twelve months of receiving a petition that presents substantial information indicating that the petitioned action may be warranted. 16 U.S.C. § 1533(b)(3)(B). *Gila Chub* makes clear that this congressionally-mandated deadline should not be subverted. 254 F.3d at 840.

## III

**[5]** For these reasons, we conclude that the Frog Decision, standing alone, fails to make the determinations required by § 1533(b)(3)(B) for a "warranted but precluded" finding. It is insufficient for requisite determinations to be lurking in the administrative record yet be unidentified in the decision itself. Likewise, they may not be implied from other published findings that are neither referenced in nor published with the decision under review. Deficiencies in the "warranted but

nating the species as a candidate, whereas in this case the 2002 CNOR addressed the problems we identified in *Gila Chub*. We express no view on this, as the 2002 CNOR was not published together with the Frog Decision.

precluded" finding cannot be cured by earlier, or later, findings, published or not, that are not part of the administrative decision itself or published together with it.

As we hold that the Frog Decision falls short of meeting the statutory prerequisites of § 1533(b)(3)(B), we decline to consider whether the "warranted but precluded" finding is arbitrary and capricious for any other reason including, hypothetically, whether it would be if the reasons stated in the CNORs were part of, or published together with, a new "warranted but precluded" finding. Given why we reverse, there is no basis for ordering the Frog to be listed, as the Center would like.

Consequently, we reverse the district court's judgment for the Service. Upon remand, the court should remand to the Service for further proceedings consistent with this opinion.

REVERSED AND REMANDED.