**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

WILDWEST INSTITUTE; ALLIANCE FOR THE WILD ROCKIES,
*Plaintiffs-Appellants*,

v.

JIM KURTH, in his official capacity as Acting Director of the U.S. Fish and Wildlife Service, an agency of the U.S. Department of Interior; RYAN ZINKE, in his official capacity as Secretary of the Department of Interior,
*Defendants-Appellees*,

STATE OF WYOMING,
*Intervenor-Defendant-Appellee.*

No. 14-35431

D.C. No. 9:13-cv-00006-DLC

OPINION

Appeal from the United States District Court
for the District of Montana
Dana L. Christensen, Chief Judge, Presiding

Argued and Submitted October 4, 2016
Seattle, Washington

Filed April 28, 2017

Before:  William A. Fletcher, Ronald M. Gould,
and N. Randy Smith, Circuit Judges.

Opinion by Judge Gould

**SUMMARY**[*]

**Endangered Species Act**

The panel affirmed the district court's summary judgment in favor of the Director of the U.S. Fish and Wildlife Service and the Secretary of the Department of the Interior ("FWS") and the State of Wyoming in a suit brought by environmental groups under the Endangered Species Act, challenging FWS's finding that listing the whitebark pine as a threatened or endangered species is "warranted but precluded."

The Secretary's "warranted but precluded" finding recognizes that a species qualifies for protection under the Endangered Species Act, but does not actually give any protection to the species.

The panel held that because the case was capable of repetition, yet evading review, the case was not moot.

The panel held that the FWS's finding that listing the whitebark pine was "warranted but precluded" satisfied the Endangered Species Act, and that the decision was not arbitrary, capricious, an abuse of discretion, or otherwise in

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

violation of the law. The panel held that the FWS was not bound to list species based solely on the degree of threat they face as demonstrated by the assigned Listing Priority Number, and that instead it could properly consider factors outside of those listed in the guidelines. The panel further held that FWS's decision contained a sufficient "description and evaluation of the reasons and data on which the finding is based" to satisfy the Endangered Species Act. 16 U.S.C. § 1533(b)(3)(B)(iii).

The panel held that the FWS may properly consider its budget, and court orders or statutory deadlines relating to pending proposals for other species, when concluding that the listing of a given species was "warranted but precluded."

## COUNSEL

Rebecca Kay Smith (argued), Public Interest Defense Center, Missoula, Montana; Timothy M. Bechtold, Bechtold Law Firm, Missoula, Montana; for Plaintiffs-Appellants.

Robert Parke Stockman (argued), H. Hubert Yang, David C. Shilton, and Andrew C. Mergen, Attorneys; John C. Cruden, Assistant Attorney General; Environment & Natural Resources Division, United States Department of Justice, Washington, D.C.; Kristin Tita, Office of the Solicitor, Rocky Mountain Region, United States Department of the Interior, Denver, Colorado; for Defendants-Appellees.

Michael J. McGrady (argued), Wyoming Office of the Attorney General, Cheyenne, Wyoming, for Intervenor-Defendant-Appellee.

**OPINION**

GOULD, Circuit Judge:

Wildwest Institute and the Alliance for the Wild Rockies (collectively, Wildwest) appeal a district court's summary judgment ruling in favor of the Director of the United States Fish and Wildlife Service and the Secretary of the Department of the Interior (collectively, FWS), and the State of Wyoming, in this suit under the Endangered Species Act (ESA), 16 U.S.C. §§ 1531–1544. Wildwest challenges FWS's finding that listing the whitebark pine as a threatened or endangered species is "warranted but precluded." Wildwest asserts that FWS's decision was arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law because FWS, (1) did not strictly follow its listing priority guidelines, (2) considered factors outside of the guidelines, and (3) found that listing the whitebark pine was precluded by species that did not face a higher degree of threat than the whitebark pine, while it did not give an individualized explanation for each such precluding species. We reject the appeal, concluding that FWS is not bound to list species based solely on the degree of threat they face as demonstrated by the assigned Listing Priority Number (LPN), that instead it could properly consider factors outside of those listed in the guidelines, and further that FWS's decision contained a sufficient "description and evaluation of the reasons and data on which the finding is based" to satisfy the ESA. 16 U.S.C. § 1533(b)(3)(B)(iii). We affirm.

# I

The whitebark pine, *Pinus albicaulis*, is a slow-growing, long-lived, five-needled conifer species found in western North America.[1]  This species grows in poor soils and on steep slopes and windy exposures at the alpine tree line and at subalpine elevations.  Although there are scattered occurrences of the whitebark pine in areas of the Great Basin, it typically occurs on windy and cold high-elevation or high-latitude sites in western North America.  No other stone pine species[2] is found in North America.

In western North America, the whitebark pine is considered a keystone, or foundation species.  This is so because it "increases biodiversity and contributes to critical ecosystem functions."  It acts as an important source of food for several species of birds and mammals, and, as the first conifer that may become established after a disturbance, it stabilizes soils and regulates runoff.  At higher elevations, snow drifts around the trees, "thereby increasing soil moisture, modifying soil temperatures, and holding soil moisture later into the season."  The trees also reduce lower

---

[1] Our description of the whitebark pine and the risks it faces is based on portions of the warranted but precluded finding that are unchallenged by Wildwest. *See* Endangered and Threatened Wildlife and Plants; 12-Month Finding on a Petition to List Pinus albicaulis as Endangered or Threatened with Critical Habitat, 76 Fed. Reg. 42,631, 42,632–38 (July 19, 2011).

[2] There are five stone pine species worldwide.  Stone pines get their name from their "stone-like seeds," and are characterized by "five needles per cluster, indehiscent seed cones (scales remain essentially closed at maturity) that stay on the tree, and wingless seeds that remain fixed to the cone and cannot be dislodged by the wind."

elevation spring flooding by shading and protecting higher elevation snow, thereby slowing the progression of snow melt.

The whitebark pine grows slowly, and the generation time[3] is about 60 years. "[S]eedlings have highly variable survival rates" ranging from 56% survival over the first year, to 25% survival by the fourth year. The whitebark pine is facing "substantial and pervasive decline throughout almost [its] entire range." It faces threats from white pine blister rust, an exotic disease, and predation from the mountain pine beetle. It has also been negatively impacted by fire suppression efforts, and habitat loss due to climate change, which may also result in additional epidemics of the mountain pine beetle.

In 2008, The Natural Resources Defense Counsel (NRDC) petitioned FWS to list the whitebark pine as an endangered species under the ESA. FWS determined that emergency listing was not warranted. After waiting more than a year, NRDC sent to FWS its required 60-day notice[4] of

---

[3] Generation time "is the average interval between the birth of an individual and the birth of its offspring." 14 Macropædia *The New Encyclopædia Britannica* 1138 (15th ed., 2010). Although whitebark pines are capable of producing seed cones at 20 to 30 years of age, large cone crops are not usually produced until the pine is 60 to 80 years old. Thus, the generation time for the whitebark pine is about 60 years.

[4] The ESA's citizen suit provision allows an individual to commence a civil suit "against the Secretary [of the Interior] where there is alleged a failure of the Secretary to perform any act or duty under section 1533 of this title [determination of threatened and endangered species] which is not discretionary with the Secretary." 16 U.S.C. § 1540(g)(1)(C). Except in an emergency situation, an individual may not commence such an action until 60 days have passed since the individual provided the

intent to sue under the ESA for failing to make the required 90-day finding[5] on the 2008 petition. NRDC filed its complaint in February 2010. On July 20, 2010, FWS published its 90-day finding, in which it found that the petition to list the whitebark pine presented substantial scientific or commercial information indicating that listing the whitebark pine may be warranted. *See* Endangered and Threatened Wildlife and Plants; 90-Day Finding on a Petition to List *Pinus albicaulis* (Whitebark Pine) as Endangered or Threatened with Critical Habitat, 75 Fed. Reg. 42,033 (July 20, 2010).

FWS issued its 12-month finding[6] on July 19, 2011, finding that listing the whitebark pine rangewide as a threatened or endangered species is warranted, but precluded. *See* Endangered and Threatened Wildlife and Plants; 12-

---

Secretary with written notice of the alleged failure to perform a nondiscretionary duty or act. *See* 16 U.S.C. § 1540(g)(2)(C); *Friends of Animals v. Ashe*, 808 F.3d 900, 904 (D.C. Cir. 2015).

[5] The ESA provides that, "[t]o the maximum extent practicable, within 90 days after receiving the petition of an interested person" to list or delist as species as threatened or endangered, "the Secretary [of the Interior] shall make a finding as to whether the petition presents substantial scientific or commercial information indicating that the petitioned action may be warranted." 16 U.S.C. § 1533(b)(3)(A). This is known as the 90-day finding.

[6] The ESA requires that within 12 months after receiving a petition that presents substantial information indicating that listing or delisting a species as threatened or endangered may be warranted, the Secretary of the Interior "shall" make a finding that the petitioned action is not warranted, is warranted, or is warranted but precluded, and "shall promptly publish" that finding in the Federal Register. 16 U.S.C. § 1533(b)(3)(B). This is known as the 12-month finding.

Month Finding on a Petition to List Pinus albicaulis as Endangered or Threatened with Critical Habitat, 76 Fed. Reg. 42,631, 42,647 (July 19, 2011) (hereinafter 2011 Finding). FWS concluded that a primary threat facing the whitebark pine is the white pine blister rust, but that it is also significantly threatened by mountain pine beetle predation, habitat loss from fire suppression and climate change, and the exacerbating effects climate change has on the other threats. *Id.* FWS also found that existing regulations would not adequately protect the species. *Id.* FWS determined that the whitebark pine "is in danger of extinction, or likely to become so in the foreseeable future, throughout all or a significant portion of its range," and that listing the whitebark pine as threatened or endangered is warranted. *Id.* Those findings present a natural prelude to effective protective actions. After all, once a species is extinct and gone, it is gone forever, with resulting loss to biodiversity and the benefits that it gives to mankind. However, FWS concluded that an immediate proposal to list the whitebark pine as threatened or endangered was "precluded by court-ordered and court-approved settlement agreements, and listing actions with absolute statutory deadlines, and work on proposed listing determinations for those candidate species with a higher listing priority." *Id.* at 42,649. It also concluded that "progress is being made to add or remove qualified species from the Lists of Endangered and Threatened Wildlife and Plants." *Id.* at 42,647.[7] FWS assigned the whitebark pine a LPN of 2 (on a scale from 1 to 12, 1 being the highest priority and 12 being the lowest), finding that it faced high magnitude threats, that the threats are imminent, and that it is a valid

---

[7] FWS determined that emergency listing was not warranted. *Id.* at 42,647. This determination is not challenged.

taxon[8] at the species level. *Id.* at 42,648; *see also* Endangered and Threatened Listing and Recovery Priority Guidelines, 48 Fed. Reg. 43,098, 43,103 (Sept. 21, 1983) (hereinafter Guidelines). FWS added the whitebark pine to the list of candidate species. 2011 Finding, 76 Fed. Reg. at 42,654. "A candidate species is one for which [FWS has] on file sufficient information on biological vulnerability and threats to support a proposal for listing as endangered or threatened, but for which preparation and publication of a proposal is precluded by higher priority listing actions." Endangered and Threatened Wildlife and Plants; Review of Native Species That Are Candidates for Listing as Endangered or Threatened; Annual Notice of Findings on Resubmitted Petitions; Annual Description of Progress on Listing Actions, 80 Fed. Reg. 80,584, 80,584 (Dec. 24, 2015) (hereinafter 2015 CNOR).[9]

On January 15, 2013, Wildwest filed a complaint for injunctive and declaratory relief against FWS, seeking review of the "warranted but precluded" finding. Wildwest, FWS, and Defendant-Intervenor State of Wyoming filed cross-motions for summary judgment. The district court granted FWS's and Wyoming's motions for summary judgment, holding that the 2011 Finding gave sufficient detail, and was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. Wildwest timely appealed.

---

[8] "[A] taxon is a taxonomic category, such as a genus or species." *Coos Cty. Bd. of Cty. Comm'rs v. Kempthorne*, 531 F.3d 792, 798 n.5 (9th Cir. 2008) (citing *The Random House Dictionary of the English Language* 1947 (2d ed. 1987)). "[A] valid taxon at the species level . . . receives a higher priority than a subspecies, but a lower priority than species in a monotypic genus." 2011 Finding, 76 Fed. Reg. at 42,648.

[9] The acronym CNOR stands for "Candidate Notice of Review."

## II

We review a district court's grant of summary judgment *de novo*. *Ctr. for Biological Diversity v. Norton*, 254 F.3d 833, 837 (9th Cir. 2001) (hereinafter *Gila Chub*).

A determination that a petitioned action is "warranted but precluded" under the ESA is subject to judicial review. 16 U.S.C. § 1533(b)(3)(C)(ii). The Administrative Procedure Act (APA) governs our review of agency actions under the ESA. *Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*, 698 F.3d 1101, 1109 (9th Cir. 2012). "[A]n agency action is valid unless it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* (internal quotation marks omitted). The scope of our review is narrow—we may not "substitute [our] judgment for that of the agency. Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)).

## III

As a preliminary matter, we must decide whether intervening events have rendered Wildwest's claims for declaratory and injunctive relief moot. While this appeal was pending, FWS issued its 2015 Candidate Notice of Review (CNOR), and assigned the whitebark pine a new, lower-priority, an LPN of 8. *See* 2015 CNOR, 80 Fed. Reg. at 80,586. FWS moved to dismiss the appeal as moot, arguing that, "[b]ecause Wildwest's claims are based on a higher-

priority LPN that had been assigned to the species in 2011, those claims are now purely academic, and this Court cannot grant relief on them.  The new finding and LPN have mooted Wildwest's challenge to the original 2011 decision."[10] Wildwest opposed the motion.

A claim of mootness must be met and analyzed at the threshold.[11]  "A claim is moot if it has lost its character as a present, live controversy.  If an event occurs that prevents the court from granting effective relief, the claim is moot and must be dismissed."  *Conservation Cong. v. Finley*, 774 F.3d 611, 618 (9th Cir. 2014) (internal quotations and citations omitted).   "The party asserting mootness bears a 'heavy' burden; a case is not moot if *any* effective relief may be granted."  *Karuk Tribe of Cal. v. U.S. Forest Serv.*, 681 F.3d 1006, 1017 (9th Cir. 2012) (emphasis in original) (quoting *Forest Guardians v. Johanns*, 450 F.3d 455, 461 (9th Cir. 2006)).

There are exceptions to the mootness doctrine.  Relevant here, a case is not moot if it is "capable of repetition, yet evading review."  *Id.* at 1018.  This "exception applies when

---

[10] FWS stated that Intervenor-Defendant-Appellee Wyoming does not oppose the motion.

[11] This is true for the jurisdictional  reason that we have no authority to decide moot cases because they present no true case or controversy. *See* U.S. Constitution, Article III, Section 2; *Chafin v. Chafin*, __U.S.__, 133 S. Ct. 1017, 1023 (2013).  We are not to give advisory opinions. *See, e.g.*, *Mills v. Green*, 159 U.S. 651, 653 (1895); *Herb v. Pitcairn*, 324 U.S. 117, 126 (1945); *Local No. 8-6, Oil, Chem. & Atomic Workers Int'l Union, ALF-CIO v. Missouri*, 361 U.S. 363, 367–68, 368 n.7 (1960) (collecting cases).   These conclusions are reinforced by the practical concern that the federal courts' limited resources should not be wasted on issues that do not need decision.

(1) the duration of the challenged action is too short to allow full litigation before it ceases or expires, and (2) there is a reasonable expectation that the plaintiffs will be subjected to the challenged action again." *Id.* Because this case meets both of the criteria for this exception, it is not moot.

First, if FWS finds that a petitioned action for a species is "warranted but precluded," FWS must annually make a new 12-month finding regarding that species' status. *See* 16 U.S.C. § 1533(b)(3)(C)(i); 50 C.F.R. § 424.14(h)(3). FWS fulfills this obligation through an annual CNOR. *See* 2015 CNOR, 80 Fed. Reg. at 80,587. A new CNOR—and potentially a new LPN—is issued every year so long as a petitioned action is found "warranted but precluded." *Id.* To the extent it differs from prior CNORs or 12-month findings, the newest CNOR supersedes all previous findings. *See id.* at 80,585. Thus, an action based on a "warranted but precluded" 12-month finding lasts only one year. This court has repeatedly held that "actions lasting only one or two years evade review." *Karuk Tribe of Cal.*, 681 F.3d at 1018.

Second, it is reasonable to expect that Wildwest will be subject to the very same challenged action again. With the exception of the 2015 CNOR, every CNOR conducted since the original finding resulted in a "warranted but precluded" finding, with an LPN of 2. *See* 77 Fed. Reg. 69,994, 70,044 (Nov. 21, 2012); 78 Fed. Reg. 70,104, 70,148 (Nov. 22, 2013); 79 Fed. Reg. 72,450, 72,485 (Dec. 5, 2014). Those findings lacked an individualized analysis of other species that precluded listing the whitebark pine—one of Wildwest's major critiques of the 2011 Finding. So long as the whitebark pine is listed as "warranted but precluded," the issue of whether listing the species as "warranted but precluded," and the reasons for that listing, will continue to arise each year.

*See* 16 U.S.C. § 1553(b)(3)(C)(i); 50 C.F.R. § 424.14(h)(3). It is reasonable to expect that Wildwest will be subject to addressing the allegedly inadequate determination again. *See Greenpeace Action v. Franklin*, 14 F.3d 1324, 1329–30 (9th Cir. 1993) (holding the case not moot because it was capable of repetition yet evading review when the regulation was in effect for less than a year and the major issue, whether there was an adequate examination of the effects of fishing on a population of sea lions, was likely to recur). Because this case is "capable of repetition, yet evading review," it is not moot, and the Federal Defendants' Motion to Dismiss Because of Mootness is DENIED.

## IV

We begin our merits analysis with a brief overview of the ESA. The Supreme Court has described the ESA as "the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 180 (1978). Congress enacted the ESA, to "provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved, to provide a program for the conservation of such endangered species and threatened species, and to take such steps as may be appropriate to achieve the purposes of the treaties and conventions" enumerated in another subsection of the ESA. 16 U.S.C. § 1531(b). To achieve these goals, the ESA sets out a robust framework for the protection of threatened and endangered species. *See, e.g.*, 16 U.S.C. §§ 1533(a)(3) (designation of critical habitat), 1533(d) (regulations for the conservation of threatened species), 1538 (prohibited acts), 1540 (penalties and enforcement).

However, before a species is entitled to these protections, the Secretary of the Interior,[12] must determine that a species is endangered[13] or threatened[14] because of: "present or threatened destruction, modification, or curtailment of its habitat or range," "overutilization for commercial, recreational, scientific, or educational purposes," "disease or predation," "the inadequacy of existing regulatory mechanisms," or "other natural or manmade factors affecting its continued existence." 16 U.S.C. § 1533(a)(1)(A)–(E). The Secretary may make a determination that a species is threatened or endangered "solely on the basis of the best scientific and commercial data available to him after conducting a review of the status of the species and after taking into account those efforts, if any, being made" by any state, foreign nation, or political subdivision thereof, "to protect such species." *Id.* § 1533(b)(1)(A). Once the Secretary determines a species is threatened or endangered, it is included on the list of threatened or endangered species

---

[12] Or the Secretary of Commerce, if program responsibilities are vested in him pursuant to the Reorganization Plan Numbered 4 of 1970, or the Secretary of Agriculture, for provisions which pertain to the importation or exportation of terrestrial plants. *See* 16 U.S.C. § 1532(15). In this case, the Secretary of the Interior, and through him or her FWS, has program responsibilities.

[13] An "endangered species" is "any species which is in danger of extinction throughout all or a significant portion of its range other than a species of the Class Insecta determined by the Secretary to constitute a pest whose protection under the provisions of this chapter would present an overwhelming and overriding risk to man." 16 U.S.C. § 1532(6).

[14] A "threatened species" is "any species which is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." 16 U.S.C. § 1532(20).

that the Secretary of the Interior publishes in the Federal Register. *Id.* § 1533(c).

Species may be listed as either threatened or endangered in one of two ways. Either the Secretary may act on his own initiative and identify a species for protection, *see id.* §§ 1533(a), (b)(1)(A); 50 C.F.R. § 424.11(c), or interested citizens may submit a petition identifying a species, which then compels the Secretary to consider that species for listing, *see* 16 U.S.C. § 1533(b)(3). *See also Gila Chub*, 254 F.3d at 834–35. If an interested citizen submits a petition to add or remove a species from either the endangered or threatened lists, the ESA sets a schedule for actions the Secretary must take on that petition.[15] *See* 16 U.S.C. § 1533(b)(3). "To the maximum extent practicable, within 90 days after receiving" a petition to list or delist a species, "the Secretary shall make a finding as to whether the petition presents substantial scientific or commercial information indicating that the petitioned action may be warranted." *Id.* § 1533(b)(3)(A). If the petition presents such information, the Secretary must "promptly commence a review of the status of the species." *Id.* "Within 12 months after receiving a petition" that presents substantial scientific or commercial information indicating listing or delisting may be warranted, "the Secretary shall make one of the following findings:"

> (i) The petitioned action is not warranted, in which case the Secretary shall promptly publish such finding in the Federal Register.
>
> (ii) The petitioned action is warranted, in which case the Secretary shall promptly

---

[15] In this case NRDC petitioned for the listing of the whitebark pine.

publish in the Federal Register a general notice and the complete text of a proposed regulation to implement such action in accordance with paragraph (5).

(iii) The petitioned action is warranted, but that—

(I) the immediate proposal and timely promulgation of a final regulation implementing the petitioned action in accordance with paragraphs (5) and (6) is precluded by pending proposals to determine whether any species is an endangered species or a threatened species, and

(II) expeditious progress is being made to add qualified species to either of the lists published under subsection (c) [of this section] and to remove from such lists species for which the protections of this chapter are no longer necessary,

in which case the Secretary shall promptly publish such finding in the Federal Register, together with a description and evaluation of the reasons and data on which the finding is based.

*Id.* § 1533(b)(3)(B).

This third finding—"warranted but precluded"—is at issue here. A "warranted but precluded" finding recognizes that a species qualifies for protection under the ESA, *see Gila*

*Chub*, 254 F.3d at 838, but does not actually give any protection to the species. The Secretary may make a "warranted but precluded" finding only in narrow circumstances. *See id.* The warranted action "must be precluded by pending proposals *and* expeditious progress must be being made to list qualified species and delist those for whom ESA's protections are no longer necessary." *Ctr. for Biological Diversity v. Kempthorne*, 466 F.3d 1098, 1102 (9th Cir. 2006) (emphasis in original); *see also* 16 U.S.C. § 1533(b)(3)(B)(iii).

When we are dealing with the potential life or death of an entire species, the legitimacy and efficacy of this system (where we accept that certain listings are "warranted but precluded") seems to be questionable policy. It means in substance that a species in peril needs some protective standards, but will get none. Yet, it is the system devised by Congress in its explicit statutory language, and so we must accept that so long as expeditious progress is being made to list/delist species and the action is actually precluded by pending proposals, the Secretary is authorized to make a "warranted but precluded" finding. Allowing the Secretary to do so is the natural consequence of the statutory language and of the fact that the Secretary has limited resources. When pending actions outstrip available resources, the Secretary must make its choices and live with its priorities, even though that means leaving factually (if not listed) threatened or endangered species without the protections of the ESA.

## V

Wildwest's primary contention is that FWS's finding that listing the whitebark pine was precluded by species with the same or higher LPNs was arbitrary and capricious, an abuse

of discretion, and otherwise not in accordance with the law because the ESA, congressional intent behind the ESA, and the agency's own guidelines, all require FWS to strictly follow its LPN rankings, "rank[ing] and list[ing] [species] according to priority numbers based on degree of threat they face."[16]  Wildwest asserts that FWS must list species in the order of their LPNs, proceeding on a "worst first" basis, based solely on the degree of threat the species face, so that in its view a species can only be precluded by pending proposals for other, higher priority species.  So it contends that there were no "higher-priority" species precluding listing the whitebark pine because there were no LPN 1s at the time FWS made its 2011 Finding.  Wildwest also argues that the agency's consideration of factors outside of the criteria outlined in the agency's listing priority guidelines—including the extinction-risk criteria the agency used to sub-rank LPN 2 species—was arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with the law.

The ESA requires the Secretary to:

> establish, and publish in the Federal Register, agency guidelines to insure that the purposes of this section are achieved efficiently and effectively.  Such guidelines shall include but are not limited to . . . a ranking system to assist in the identification of species that should receive priority review under subsection (a)(1) [determination of whether a

---

[16] Wildwest of course does not dispute FWS's environmentally-friendly finding that listing the whitebark pine is warranted, or that the whitebark pine is facing high magnitude, imminent threats.

species is threatened or endangered] of this section.

16 U.S.C. § 1533(h)(3).

To determine the meaning of a statute, we look to its language. *See Freeman v. DirecTV, Inc.*, 457 F.3d 1001, 1004 (9th Cir. 2006). Nothing in the plain language of the ESA requires FWS to prioritize species based *solely* on the degree of threat as established by the LPN assigned under the guidelines.

Congress mandated the establishment of the ranking system "*to assist* in the identification of species that should receive priority review." 16 U.S.C. § 1533(h)(3) (emphasis added). "Assist" means "to give support or aid." *Webster's Third New International Dictionary* 132 (Philip Babcock Gove et al. eds., 1993). The plain language of the statute thus shows that the ranking system is just one tool used to identify priorities for listing. The use of "assist" indicates that Congress did not intend the ranking system to be the only basis for identifying priorities. *See Envtl. Def. Ctr. v. Babbitt*, 73 F.3d 867, 871 (9th Cir. 1995) (noting the language of the statute is the primary indication of congressional intent). Had Congress intended the degree of threat or the ranking system to be the sole means of determining priority, it would have said so. *See Biodiversity Legal Found. v. Babbitt*, 146 F.3d 1249, 1252–53 (10th Cir. 1998) (rejecting the argument that § 1533(h) "only allows prioritization of species based on the magnitude and immediacy of the threat to the species" (internal quotations omitted)).

Because the statute is clear on its face, "reference to legislative history is inappropriate." *Halaim v. I.N.S.*,

358 F.3d 1128, 1134 (9th Cir. 2004).[17]   Nor do FWS's
regulations require that species be ranked or listed based
solely on the degree of threat.  After a notice and comment
period, as required by the ESA, *see* 16 U.S.C. § 1533(h),
FWS published its notice of the final priority guidelines for
listing and reclassification of species from threatened to
endangered in 1983.  *See* Guidelines, 48 Fed. Reg. 43,098.
These guidelines apply three criteria—magnitude of threat,
immediacy of threat, and taxonomy—to determine a listing

---

[17] Even if we were to consider legislative history, that history shows
Congress contemplated and rejected the notion that a warranted listing
may be precluded only by another species facing a higher degree of threat.
Amendments proposed in the Senate would have required the Secretary,
within 12 months of receiving a listing petition, to propose a regulation
implementing the petitioned action, publish a finding that the action is not
warranted, or publish "a finding that the proposal and promulgation of a
final regulation implementing the petitioned action is precluded by
pending or imminent proposals to add to" the endangered or threatened
species list, "species that are *subject to a greater degree of threat than the
petitioned species*." S. 2309, 97th Cong. § 4(b)(3)(C)(iii) (1982) (emphasis
added).   Congress did not adopt this language.   *Compare id.*, *with*
Endangered Species Act Amendments of 1982, Pub. L. No. 97-304,
96 Stat. 1411 (1982).   The language Congress adopted omitted all
references to "greater degree of threat," instead referring to "pending
proposals to determine whether *any* species" is endangered or threatened.
Endangered Species Act Amendments of 1982, § 2(a)(2), 96 Stat. at 1412
(emphasis added); 16 U.S.C. § 1533(b)(3)(B)(iii)(I).  Congress's rejection
of language that would have required preclusion decisions to be based
solely on the level of threat is compelling.  *See I.N.S. v. Cardoza-Fonesca*,
480 U.S. 421, 442–43 (1987) ("Few principles of statutory construction
are more compelling than the proposition that Congress does not intend
*sub silentio* to enact statutory language that it has earlier discarded in
favor of other language." (quoting *Nachman Corp. v. Pension Benefit
Guar. Corp.*, 446 U.S. 359, 392–93 (1980) (Stewart, J., dissenting)).
Although legislative history shows that degree of threat is an important
consideration, *see* H.R. Rep. No. 97-835, at 21, 25 (1982) (Conf. Rep.),
it is not the only factor FWS may use.

priority number ranging from 1 (highest priority) through 12 (lowest priority).  *Id.* at 43,102–03.

Throughout the notice FWS emphasized that the priority system does not create an inflexible framework that dictates results, but instead acts as a flexible guide.  *See id.* at 43,098, 43,101.  Although FWS recognized that "[i]nasmuch as listing is an identification process, it appears to be most appropriate to proceed on a 'worst-first' basis and list those species in greatest immediate danger of extinction first," *id.* at 43,099, it also clarified that the guidelines would not necessarily preclude listing lower priority species when doing so would be an efficient use of resources, *see id.* at 43,099–100.  In passing the guidelines, FWS did not bind itself to making its listing decisions based solely on the listing priority number assigned based on the guidelines, or based solely on the degree of threat a species faces.  Congress and FWS enshrined flexibility into the system so that the responsible agency could make the most efficient and effective use of its resources.  Indeed, FWS specifically contemplated using additional information outside the criteria in the guidelines.  *See, e.g.*, *id.*  The guidelines do not prohibit FWS from considering information in addition to that considered under the guidelines.

We conclude that nothing in the ESA, its legislative history, or FWS's own guidelines requires FWS to make its listing decisions based solely on the LPN assigned under the guidelines or on the degree of threat a species faces.  FWS's considerations of factors in addition to a species' LPN was proper, and its decision to list other species with the same or higher LPNs before the whitebark pine did not render its "warranted but precluded" finding for the whitebark pine arbitrary and capricious, an abuse of discretion, or otherwise

not in accordance with the law.**[18]** *See* 2011 Finding, 76 Fed. Reg. at 42,649.

## VI

Wildwest also asserts that the "warranted but precluded" decision for the whitebark pine was arbitrary and capricious because "the agency's decision does not clearly itemize which species with pending or imminent listing proposals are allegedly a higher priority than whitebark pine, and explain why those species are a higher priority." FWS counters that "a reasonable, concise explanation indicating its reasons for prioritizing various actions is sufficient," and that it need not "prepare a resource-intensive, itemized ranking of all pending species." FWS asserts that the court should defer to its interpretation that a concise explanation is all that the ESA requires.

There are sound reasons supporting FWS's position in this respect. Congress demanded reasons and data for a "warranted but precluded" determination, but did not specify a required form. For that reason a concise and reasonable explanation suffices.

---

**[18]** Wildwest states, "It is also unclear whether this additional ranking system [the extinction-risk criteria] was approved and published in the Federal Register as required by the ESA; to the extent it was not published in the Federal Register, the agency is violating the ESA by making decisions using this system." Wildwest did not present sufficient argument on this issue, and we decline to address it. *See Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994) ("We review only issues which are argued specifically and distinctly in a party's opening brief. We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim . . . ." (internal citation omitted)).

If the Secretary determines the petitioned action is "warranted but precluded," "the Secretary shall promptly publish such finding in the Federal Register, together with a description and evaluation of the reasons and data on which the finding is based." 16 U.S.C. § 1533(b)(3)(B)(iii). FWS "must show that [it] is 'actively working on other listings and delistings and must determine and publish a finding that such work has resulted in pending proposals which *actually* preclude[] [FWS] proposing the petitioned action at that time.'" *Gila Chub*, 254 F.3d at 838 (emphasis in original) (quoting H.R. Rep. No. 97-835, at 22 (1982) (Conf. Rep.)); *see also Kempthorne*, 466 F.3d at 1102. It must "determine and present evidence that [it] is, in fact, making expeditious progress in the process of listing and delisting other species." *Gila Chub*, 254 F.3d at 838. (quoting H. Rep. No. 97-835, at 22); *see also Kempthorne*, 466 F.3d at 1102.

FWS "cannot make a 'warranted but precluded' finding without publishing a description and evaluation of its reasons and data together with the finding." *Kempthorne*, 466 F.3d at 1102 (emphasis removed). That is, FWS's determinations that work on other pending actions actually precludes listing the petitioned species and that it is making expeditious progress "must be part of the published findings." *Id.* It is not sufficient that FWS's "path could reasonably be discerned," as "this option is not available under the ESA, which expressly directs [FWS], when making a 'warranted but precluded' finding, to 'publish such finding in the Federal Register, together with a description and evaluation of the reasons and data on which the finding is based.'" *Id.* at 1099–1100 (quoting 16 U.S.C. § 1533(b)(3)(B)). It is also "insufficient for requisite determinations to be lurking in the administrative record yet be unidentified in the decision itself. Likewise, they may not be implied from other published

findings that are neither referenced in nor published with the decision under review." *Id.* at 1104.

The published findings that support a "warranted but precluded" decision are an important aspect of the petition process. "They provide public notice of species that are likely to become the subject of proposed rules" and allow the public to respond appropriately. *Gila Chub*, 254 F.3d at 839. "They also provide the basis for review of [FWS's] decision by the court," *id.*, which is mandated by the ESA, 16 U.S.C. § 1533(b)(3)(C)(ii). Congress explained that, "[i]n cases challenging the Secretary's claim of inability to propose an otherwise warranted petitioned action, the court will, in essence, be called on to separate justifications grounded in the purposes of the Act from the foot-dragging efforts of a delinquent Agency." H.R. Rep. 97-835, at 22. Evidence that the agency is making expeditious progress and that listing the petitioned species is actually precluded by work on other pending proposals provides the basis for the court to make this determination. *Id.*

Wildwest's challenge focuses solely on FWS's explanation of why other pending proposals actually preclude action on the whitebark pine; it does not challenge the agency's assertion of expeditious progress. We have not found, and Wildwest does not cite, any binding precedent that requires FWS to provide a detailed, individualized explanation for each species that has a pending proposal which FWS determines precludes action on the petitioned species. We decline to impose such a burdensome requirement, which would divert scarce agency resources to writing justifications rather than studying the pertinent sciences, species, and ecosystems. On such matters, the necessary degree of explicitness is outlined by the Supreme

Court's *State Farm* decision, and if the agency has shown a rational connection between its determination and the record, that is all that will be required. 463 U.S. at 43. We hold that a concise and reasonable explanation of the evaluation of the reasons and data is sufficient.

Wildwest places a heavier reliance on *Kempthorne* than it can bear.[19] In that case, we held that FWS must publish a description and evaluation of its reasons and data for finding a listing precluded together with the "warranted but precluded" finding. *See Kempthorne*, 466 F.3d at 1102. The agency's generalized statement that listing the Sierra Nevada Mountain Yellow-Legged Frog (hereinafter Frog) was precluded by species subject to court orders, judicially approved settlements, and emergency listings, was not a "description or evaluation of the data or reasons why listing the Frog is actually precluded." *Id.*; *see also id.* at

---

[19] Wildwest also relies on *California Native Plant Society v. Norton*, Civ.A.03-1540(JR), 2005 WL 768444 (D.D.C. Mar. 24, 2005). That case is not binding, nor does it support Wildwest's argument that the "warranted but precluded" decision here does not provide enough detail. In that case, the court held "the ESA requires that FWS itemize pending species listings that preclude listing the Spineflower and describe the 'reasons' (whatever they may be) why each of these species listings has a higher priority than the Spineflower and why actions on these species *in toto* 'preclude' action on the Spineflower. This information *need not be detailed* (at least not in the CNOR—the Administrative Record if an actual case is brought is another question), but it must be present." *Id.* at *8 (second emphasis added) (internal citation omitted). In that case, FWS provided *no* explanation as to why species that had the same priority level as the Spineflower precluded listing the Spineflower. *Id.* Here, FWS did explain how it prioritizes species that have the same LPN as the whitebark pine. *See* 2011 Finding, 76 Fed. Reg. at 42,649.

1100–01.[20]   Nor could FWS rely on a CNOR published *before*, and not referenced in, the "warranted but precluded" finding to support its assertion made in the Frog decision that listing was precluded by court orders, settlement agreements, and emergency listings. *Id.* at 1102. We declined to consider whether the information provided in the earlier CNOR—which included a description of why listing petitioned candidate species was precluded, explained budgetary constraints, and identified the particular species on which FWS would work—would have met FWS's burden

---

[20] FWS provided the following preclusion explanation:

> While we conclude that listing the [Frog] is warranted, an immediate proposal to list is precluded by other higher priority listing actions. During Fiscal Year 2003 we must spend nearly all of our Listing Program funding to comply with court orders and judicially approved settlement agreements, which are now our highest priority actions. To the extent that we have discretionary funds, we will give priority to using them to address emergency listings and listing actions for other species with a higher priority. Due to litigation pertaining to various listing actions, our planned work with listing funds in Fiscal Year 2003 consists primarily of addressing court-ordered actions, court-approved settlement agreements, and listing actions that are in litigation. (Also, some litigation-related listing actions already are scheduled for Fiscal Year 2004.) We expect that our discretionary listing activity in Fiscal Year 2003 will focus on addressing our highest priority listing actions of finalizing expiring emergency listings.

*Kempthorne*, 466 F.3d at 1100–01 (quoting Endangered and Threatened Wildlife and Plants; 12-Month Finding for a Petition to List the Sierra Nevada Distinct Population Segment of the Mountain Yellow-legged Frog (1Rana muscosa), 68 Fed. Reg. 2283, 2303 (Jan. 16, 2003)).

had it been published with the Frog's "warranted but precluded" finding. *See id.* at 1101–02.

Wildwest asserts that *Kempthorne* requires FWS to publish a detailed explanation and the accompanying documentation for each species FWS determines precludes action on the whitebark pine. We do not read *Kempthorne* so broadly. The facts of that case are distinguishable. The preclusion explanation at issue here is a far cry from the paragraph-long explanation that was the subject of *Kempthorne*. Here, the FWS gave a detailed explanation of its budget, along with a general explanation that listing the whitebark pine was "precluded by court-ordered and court-approved settlement agreements, and listing actions with absolute statutory deadlines, and work on proposed listing determinations for those candidate species with a higher listing priority." 2011 Finding, 76 Fed. Reg. at 42,649. FWS also described how it sub-ranks species within LPN 2 and 3, listing the extinction-risk criteria and its sources, and the general results of that sub-ranking. *Id.* Finally, it explained the factors it considers when evaluating efficiency—such as the possibility of preparing multi-species proposals, geographic or threat overlap, and staff resources—which can result in working on species with higher LPNs. *See id.* at 42,649–50.

These generally-applicable explanations are followed by multiple pages of charts showing completed listing actions (demonstrating expeditious progress, which is not at issue), and actions that were funded in 2010 and 2011 (but are not yet completed), showing both expeditious progress and also which pending proposals actually preclude listing the whitebark pine. *See id.* at 42,650–54. This later chart lists the species and LPN; states if the species is subject to a court

order/settlement agreement, a statutory deadline, or is a high-priority listing (chosen based on the factors discussed earlier in the decision); states the type of action; and, often times, includes information on what fiscal year funds support the action. *See id.* at 42,652–54.

We conclude that FWS provided an adequate explanation of its reasons and the data relied upon to find that work on pending petitions actually precluded listing the whitebark pine. FWS gave a reasonable explanation of its reasoning. Neither *Kempthorne*, nor any other case from other circuits, requires FWS to publish an individualized evaluation for each and every precluding species and every datum upon which it relies. The ESA, and our cases, require FWS to publish "*a description and evaluation* of the reasons and data on which the ['warranted but precluded'] finding is based." 16 U.S.C. § 1533(b)(3)(B)(iii) (emphasis added); *see Kempthorne*, 466 F.3d 1102; *Gila Chub*, 254 F.3d at 838–39. This requirement is met when, as here, FWS explains its budget and how it prioritizes actions, the criteria it uses to rank within a given LPN, and a listing of the specific species with pending proposals that actually preclude listing the petitioned species.

It goes without saying that if FWS wants to provide additional details—*e.g.*, separate, individualized descriptions of why each species with the same LPN precludes a listing action—it is free to do so. *See, e.g.*, Endangered and Threatened Wildlife and Plants; 12-Month Finding for a Petition to List the Southern Rocky Mountain Population of the Boreal Toad as Endangered, 60 Fed. Reg. 15,281, 15,283 (Mar. 23, 1995) (providing a sentence-long explanation for each of the three species that precluded listing the Boreal toad, and cited with approval in *Gila Chub*, 254 F.3d at

838–39, as an example of a "detailed explanation" in a "warranted but precluded" finding). There may be benefit to the public when FWS includes as much detail as is practicable, giving individualized explanations for different species within the same LPN. We conclude, however, that the ESA does not compel such detailed explanations.

Again, the purpose of the published findings is two-fold. They provide the public with notice of what species are likely to become the subject of a proposed rule, and they allow the court to distinguish between an agency that is impermissibly foot-dragging, and one that is diligently pursuing the goals of the ESA but constrained by the practical realities of resource constraints. FWS's explanation in its 2011 Finding provides a sufficient description and evaluation of its reasons and data upon which it relied to accomplish these goals, and satisfied the ESA.

## VII

Finally, Wildwest argues that FWS was impermissibly "foot-dragging" by finding the listing "warranted but precluded." It contends that FWS cannot rely on self-imposed budget limitations, or court-ordered or statutory deadlines for determinations on other species to delay listing the whitebark pine. Wildwest asserts that relying on these considerations renders the 2011 Finding arbitrary and capricious, an abuse of discretion, and a violation of the ESA.

Although some courts have recognized that FWS's budgetary constraints may at least in part be the Department of the Interior's own doing, *see W. Watersheds Project v. U.S. Fish & Wildlife Serv.*, No. 4:10-CV-229-BLW, 2012 WL 369168, at *16 (D. Idaho Feb. 2, 2012), nothing in the ESA

requires the Department to make budget requests sufficient to eliminate the need for the "warranted but precluded" "relief valve" that Congress provided in recognition of FWS's limited resources, *In re Endangered Species Act Section 4 Deadline Litigation-MDL No. 2165*, 704 F.3d 972, 978 (D.C. Cir. 2013) (internal quotation omitted). Nor can we review the agency's budget requests. *See Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 20 (D.C. Cir. 2006). Ultimately, it is Congress that imposes budgetary constraints upon FWS. *See* U.S. Const. art. I, § 9.

The plain language of the ESA belies Wildwest's assertion that the statute prohibits consideration of budget, court orde rs, or statutory deadlines in making "warranted but precluded" determinations. Nothing in the ESA so indicates, as the statute refers only to preclusion by "pending proposals." 16 U.S.C. § 1533(b)(3)(B)(iii)(I). FWS may properly consider its budget, and court orders or statutory deadlines relating to pending proposals for other species, when concluding that the listing of a given species is "warranted but precluded."

## VIII

Wildwest's vigorous advocacy for this imperiled species is laudable, and its advocacy plays an important role in protecting our planet's vulnerable species. We can appreciate Wildwest's frustration with the slow-moving ESA process. It has been more than five and a half years since FWS found that the whitebark pine faces extinction without the protections of the ESA. *See* 2011 Finding, 76 Fed. Reg. 42,631. In that time, the whitebark pine has received none of the ESA's benefits. In many ways, a "warranted but

precluded" determination is a "toothless finding." *W. Watersheds Project*, 2012 WL 369168, at \*1.

Perhaps were the world different, the threat of extinction would not loom so large over species and the ESA would be unnecessary. But in reality, many species are subject to threats and dangers as the world changes. The species must live with the threats that are a result of increased human population, loss of habitat, increased air and water pollution, and global warming, or the species must adapt to the changes those threats bring. Yet sometimes change is demanded faster than a species can handle.[21] Despite its best efforts, FWS's ability to protect species through the ESA is limited by practical realities. Scarce funds and limited staff resources may prevent FWS from taking immediate final action to list or delist a species. The "warranted but precluded" finding allows FWS to work within these realities. In this case, FWS's finding that listing the whitebark pine was "warranted but precluded" satisfied the ESA. The safety valve applied by the agency was one that Congress itself devised in the statutory language. The decision was not arbitrary, capricious, an abuse of discretion, or otherwise in violation of the law.

**AFFIRMED.**

---

[21] The idea often is attributed to Charles Darwin that it is not the most intelligent or the strongest species that survives, but the one best able to adapt to change in the world. *See* Robin Kundis Craig & Melinda Harm Benson, *Replacing Sustainability*, 46 Akron L. Rev. 841, 878 & n.197 (2013).